## J. B. CHEEK, GUARDIAN, v. W. S. HERNDON ET AL.

### No. 2879.

1. **Clerical Error.** — That the officer taking the acknowledgment to a deed by Jasper M. Williamson, signed J. M., certified that *James* M. acknowledged it, will not vitiate the deed, the execution of the deed and identity of the grantor being otherwise proved.

2. **Equitable Defense—Trespass to Try Title.** — Williamson and wife owned two tracts of land, 320 acres the Robbins tract, and 305 acres the Gilbert, the latter the more valuable. At the wife's death the estate was not in debt, and owned $7000 of personal property. She left children. The husband married again and had children by the second marriage. He sold the Gilbert tract and squandered the personal property. nothing reaching his children by the first marriage, but they resided upon the Robbins tract. In this condition he conveyed by deed of gift an undivided half-interest in the Robbins 320 acres tract to his second wife and her children. He had ceased to reside upon the Robbins tract, and from time to time conveyed parts of it to his first wife's children. These facts were alleged in defense to suit by those holding under the deed of gift against the purchasers from the children of the first marriage. *Held*, exceptions which were only equivalent to a general demurrer to the answer were properly overruled.

3. **Testimony to Amount of Community Property at Death of Wife.** — The defendants claiming under deeds from the children of the first marriage were entitled to show what assets were received by the husband at his wife's death, as in a settlement with him equity would require him to compensate them in the residue of the land, if necessary. The plaintiffs claiming under a deed of gift were in no better condition than their grantor, the survivor of the first marriage.

4. **Immaterial Matters.**—Herndon, the defendant, when on the stand as witness was asked on cross-examination as to his chain of title to other land held by him. The question was properly excluded. It was legitimate for witness to buy such other land from any one without affecting his title in the land in suit.

5. **Practice — Bill of Exceptions.** — A bill of exceptions to the exclusion of a question asked a witness will not be considered unless the answer desired to be introduced be shown.

6. **Competent Evidence.**—It was competent to prove that the father after his second marriage left his children upon one tract of land and moved with his second wife to another tract. This would tend to support a finding by the court that the father had relinquished that tract to his children.

7.   **Fact Case.**—See facts held sufficient to support a finding by the court that the land in controversy had been conveyed by the father to his children by his first marriage, and in satisfaction of their claim upon the community property owned at their mother's death.

APPEAL from Smith.   Tried below before Hon. FELIX J. McCORD. The opinion states the case.

*White & Edwards,* for appellant.—When one partner in a marital community dies, leaving children, the legal title to one-half the community estate vests immediately in such children; and no conveyances of such property by the survivor, without administration or partition, and there being no debts against or incumbrances on said estate, can alienate more than a half-interest in the property attempted to be conveyed, nor affect the title of such children to a half-interest therein, nor increase the estate of such children in the community property remaining.   Rev. Stats., art. 1653; Johnson v. Harrison, 48 Texas, 257; Dickerson v. Abernathy, 1 Posey's U. C., 107; De Garca v. Galvan, 55 Texas, 53.

*George H. Gould* and *W. S. Herndon,* for Herndon and Allen; *Finley, Marsh & Butler,* for St. Louis, Arkansas & Texas Railway Company.— J. M. and Mary A. Williamson were married.   Mary A. died September 22, 1865, intestate, leaving seven children.   The community owned two tracts of land, Joel Gilbert 305 acres, and Joseph Robbins 320. The 305 acres tract was more valuable than the 320 acres tract.   It also owned about six or seven thousand dollars of personal property. There was no administration.   J. M. Williamson sold the 305 acres for cash, and by metes and bounds, January 22, 1867, and appropriated the proceeds to his own use, and converted all the personal property to his own use, the children's half valued at least at $3000.   There was no personal property left to reimburse the children for their half appropriated by their father.   He was insolvent, and the only property remaining of the estate of Mary A. Williamson was the 320 acres then in their possession.   The law applicable to this state of facts vested the equitable title to the entire 320 acres of the Joseph Robbins survey in the said seven heirs.   And the said J. M. Williamson, after his appropriation as aforesaid, had no lawful authority to sell or give away the said 320 acres, and the heirs in possession held adversely to him from January 22, 1867, the day he conveyed said 305 acres tract of land, and their possession was notice of their title.   58 Texas, 298; 59 Texas, 680; 55 Texas, 680; 64 Texas, 498; 65 Texas, 592; 60 Texas, 111; 61 Texas, 589; Id., 642.

COLLARD, JUDGE, *Section A.*—This suit was brought on the 6th of January, 1888, by Sammie B. Reed and J. B. Cheek, guardian of the

estate of the minors Ida, Annie, and Minnie May Williamson, against W. S. Herndon, O. L. Allen, and the St. Louis, Arkansas & Texas Railway Company, to recover and for partition of one-half undivided interest in the Joseph Robbins 320 acres survey of land situated in Smith County. Herndon made his warrantors parties to the suit, to-wit, Julius L. Williamson, W. G. Williamson, Dolly Yancy and her husband N. M. Yancy, W. G. Johnson, Mary B. Adams and her husband L. O. Adams, and J. M. Williamson. The following are the important facts of the case:

Jasper M. Williamson and Mary A. Williamson were husband and wife; she died September 22, 1865, leaving surviving her, her husband and seven children of the marriage—Mrs. Lady Turner, Frank, Julius, Dolly, John, Mollie B., and Gallatin, or W. G. Mrs. Turner died in 1869, her husband S. W. Turner surviving her. Frank died in 1873, leaving no wife or child. At the time of the death of Mrs. Mary A. Williamson, the community property of herself and her husband consisted of the Joseph Robbins 320 acres survey of land and 305 acres of the Gilbert survey, besides several thousand dollars in personal property. In 1867 J. M. Williamson married his second wife Frances E. Plaintiffs are the children of the second marriage, all minors except Sammie B. Reed, who married in April or May, 1883. Frances E. Williamson, the second wife of J. M. Williamson, died about the year 1875.

On January 22, 1867, J. W. Williamson conveyed the Gilbert survey of 305 acres to his son John T. Williamson by deed, expressing the consideration as $500, giving to his first wife's children no part of the proceeds of the sale. The evidence tends to show that he also appropriated the personal community estate of his first marriage and accounted to the children for none of it. The 305 acres tract was more valuable than the 320 acres. Hence it appears that he appropriated considerably more than his half of the community and more than his half of the land. This being the condition of things, on January 20, 1872, he made a deed of gift to his second wife and the children of that marriage to an undivided half of the 320 acres of land, the Robbins survey. This deed has never been found, but he had it duly recorded in the Smith County record of deeds, March 9, 1872. Upon this title the plaintiffs sue the vendees of the children of the first marriage, who paid value for the land purchased, and the vendees of J. M. Williamson, for fractional parts of the same survey, who also paid value for the same. Defendants contend that as J. M. Williamson had disposed of and appropriated more than his one-half in value of the community land by sale of the Gilbert survey, the equitable title to his half of the Robbins 320 acres was vested in the children of the first marriage, and that his deed of gift to his second wife and children, the consideration being "for natural love and affection," conveyed no title, and that such children can not recover and have partition of the same

with defendants holding the rights of the first set of children and rights of J. M. Williamson derived from the first set of children.

This is the main issue, but there are other minor issues which will be explained as they arise in this review of the case. The cause was by agreement withdrawn from the jury after the trial had commenced, and it was tried by the judge, who rendered judgment for plaintiffs for an undivided half-interest in 22 acres, three-fourths acre, and 1½ acres of the Robbins survey, describing each tract by metes and bounds, quieting the title of defendants Allen and the railway company to the land described in their deeds; also quieting the title of Herndon to so much of the survey as was not adjudged to plaintiffs, they to pay the costs incurred by Allen and the railway company and one-half of other costs of suit. Cheek as guardian has appealed.

On the trial the defendants read in evidence over objection of plaintiffs the deed of J. M. Williamson to John T. Williamson for 305 acres of land of the Gilbert survey. It is signed J. M. Williamson and acknowledged for record by James M. Williamson. The objection to the deed was that "it was not signed and acknowledged legally by Jasper M. Williamson, and was not material." The court allowed the bill of exceptions, with the explanation that the facts showed that Jasper M. Williamson and J. M. Williamson was the same person, and that "James" in the certificate of acknowledgment was a clerical error. The evidence and the record before us and the pleadings identify the grantor under "J. M." as well as "Jasper M." Williamson. The deed to his second wife and her children is signed J. M. Williamson. Several of his recognized deeds were signed "J. M.," and were read in evidence. His identity under both names is clearly established. We agree with the court below that the error in the certificate of acknowledgment was clerical only. Such an error could not affect the deed itself. The objection was not that it was not a recorded instrument nor that it had not been proved up as at common law. The court's ruling was correct.

Appellants assign as error the overruling of their exceptions to all that part of defendant's first amended answer filed February 28, 1889, contained in subdivisions 6 to 20, for the reason that such portions of the amended answer set up matter that was irrelevant. The exceptions to the pleading were as follows: "And plaintiffs specially except to all that part of said pretended answer included in subdivisions thereof 6 to 20 inclusive, because said part sets up a series of matters and things and alleges transactions foreign to this suit, and not relevant to any issue herein, and which constitute no defense to this action." The pleading referred to is as follows:

"Subdivisions 6 to 20 of said amended answer set up matter in substance as follows: That when Mary A. Williamson, the first wife of Jasper M., died, in 1865, there were no debts or incumbrances against

the community estate of herself and said Jasper; that in January, 1867, said Jasper M. Williamson conveyed the 305 acres tract of land belonging to said estate to John T. Williamson for a cash consideration; that said Jasper M. appropriated to his exclusive use all the personal property belonging to said estate, amounting in value to about $7000; that about the year 1868 said Jasper M. married his second wife Frances E., and on January 20, 1872, executed to her and her children by him begotten a deed of gift to an undivided half-interest in the Robbins survey of 320 acres, which was also part of said community estate; that said deed of gift was void because the donor then had no interest in the Robbins survey, having theretofore conveyed and appropriated fully one-half of said community estate, and because it was made to cheat and defraud the heirs of Mary A. Williamson, deceased; that the said heirs acquiesced in the partition of said estate as thus made by said Jasper M.; that neither said heirs nor their vendees knew of said deed to Frances E. Williamson and her children till 1887; that when said deed was executed in 1872 there was pending a suit by the United States Government against said Jasper M. Williamson for illicit distilling on said Robbins survey, and said deed was made to prevent the government from confiscating the land, and was not intended as a bona fide conveyance; that after its execution said Jasper M. treated it as annulled and revoked; that in 1878 and 1879, after the death of said Frances E. Williamson, said Jasper M., by his several deeds to the then living children of his first wife, conveyed to them, in settlement of their inherited interest in said community estate, various parcels, by metes and bounds, of the Robbins survey, aggregating $205\frac{64}{100}$ acres thereof, and by his deeds to W. S. Herndon, E. S. and P. W. Rowland, and W. G. Williamson, conveyed to them the balance of said tract of 320 acres in several separate parcels for cash considerations; that by said deeds executed in 1878 and 1879, through which defendants deraign title, said Jasper M. Williamson revoked and annulled his said deed executed to his second wife Frances E. and her children in 1872.''

The exceptions point out no special defects in the plea; they are general, and amount to no more than a general demurrer. We do not hesitate to say that a general demurrer should not have been sustained. The special exceptions have not directed our attention to any insufficiency in the matters pleaded, if any exists. The court's ruling was correct.

The assignment of error that the court should have sustained exceptions to defendant's plea of improvements in good faith need not be considered, because the court allowed no compensation for them.

S. W. Turner, a son-in-law of J. M. Williamson, and W. S. Herndon were permitted by the court over objections of plaintiffs to testify as to the amount of personal property belonging to the community estate of Williamson and his first wife and on hand at her death, ap-

propriated by Williamson and not accounted for to her heirs. It is insisted that the evidence was immaterial and irrelevant. The evidence was pertinent and material to the issue charging him with the appropriation of more than his share of the community. Having taken more than his one-half of the land, it was proper to show that he had not compensated the heirs with personalty, but had used all of it for his own benefit. In a settlement with the heirs, equity would require him to compensate them in the residue of the land, if need be. Plaintiffs are in no better attitude in this suit so far as this question is involved than he himself would be in a suit as plaintiff claiming the land from the heirs. In so far as defendants have acquired the equitable title of the heirs, equity would protect them to the same extent that the heirs themselves would be protected in a similar suit by their father. He was and is insolvent, and no moneyed judgment in their favor against him would be of any value. They would have no remedy except by taking the land. Equity would give it to them, as it will decree it to their vendees. Gilliam v. Null, 58 Texas, 298; Redding v. Boyd, 64 Texas, 498; 46 Texas, 52.

Another assignment of error complains that "the court erred in sustaining the objection of defendants to the questions and interrogatories propounded to defendant Herndon, on cross-examination, as to whether he owned land on the Joel Gilbert survey and deraigned the title thereto direct from Jasper M. Williamson and not through John T. Williamson."

The object of the testimony was to support the issue made by plaintiffs that the deed of J. M. Williamson to John T. Williamson for the Gilbert land was simulated and did not in fact convey the land, and to show that Herndon was committed to that construction of the transaction. "The grantee is not estopped by the acceptance of a deed from disputing the grantor's title." 2 Dev. on Deeds, sec. 951. Such an act by Herndon could not affect the title acquired from the heirs. It would be immaterial whether Williamson intended to convey the Gilbert land by his deed to his son John T. Williamson. By making the deed he had clouded the title of the heirs; he had assumed to convey it, and after this the heirs could elect to let the conveyance stand and claim other land of equal value out of the community or to sue the vendee. Williamson could not complain of the election made, nor could his donees. Herndon was at liberty to purchase the Gilbert from any one who pretended to own it, whether the title was good or not, and in so doing he would not affect his title from the heirs to the Robbins land.

While J. B. Cheek was on the stand he was asked by plaintiffs to state what claim Mrs. Frances E. Williamson made to the land (one-half of the Robbins 320 acres) in her lifetime, and whether she claimed to know of the deed to her and her children. The court sustained an objection to the question, and error is assigned to the ruling. The bill

of exceptions does not show what the answer of the witness would have been. In such case the assignment can not be noticed. McAuley v. Harris, 71 Texas, 639. But we may say that no harm was done the plaintiffs, whatever the answer may have been, because the court below found that the deed was executed and that its registration was notice to the defendants. Judgment was rendered in favor of the defendants for a part of the land, upon the ground that the land was the property of the first set of children.

Appellants complain of the finding of the court, that about the time of his second marriage J. M. Williamson moved with his wife on to the Gilbert survey and left the children of the first marriage in possession of the Robbins survey. This finding was not necessary to the decision of the court as made. The effect of the deeds considered with other facts was the real question; but the evidence does show that about the time of his second marriage he moved with his second wife to the Gilbert survey.

On this question W. S. Herndon testified: "I did know the said land. The Joseph Robbins 320 acres belonged to the heirs of M. A. Williamson, and they had resided on it and claimed it from the death of their mother, and J. M. Williamson claimed that the Robbins 320 acres belonged to the children of M. A. Williamson. When J. M. Williamson married the second time he may have moved temporarily to the old place on the Robbins 320 acres; if so, he resided there only long enough to complete the new house on the Joel Gilbert survey and then moved into it. But my recollection is that he moved directly into the new house in 1868, in the fall, and never resided with his wife and plaintiffs at all on the Robbins survey. Several of the children of the first marriage were then grown. Mrs. Turner was about 24 years old. John and Frank were both over 21, and the grown children held the possession of the old place; the younger children lived with them on the land, except Dolly, and they kept house there until the last of them sold it and deeded the land away."

This evidence is corroborated in the main by Turner, a son-in-law of Williamson, who with his wife lived on the land a while, except he says some of the younger children of the first marriage went with their father when he moved on the Gilbert land. These facts sufficiently support the purpose and meaning of the court's finding that Williamson was not claiming any of the 320 acres survey, and that his deed to his second wife and children was made for some other purpose than to pass the title. However, the court, as before stated, declared that the deed conveyed the legal title to an undivided half of it. Had the court concluded from the evidence that the deed was simulated, was not intended to and did not convey such title as was claimed by defendants, the special finding above would have been of more importance. At all events, the evidence supports the meaning of the finding that he was not claim-

ing the Robbins tract or any interest in it, but had surrendered it to his first wife's heirs—that is, the evidence supports the finding in so far as it leads to such a conclusion.

Other assignments of error demanding consideration may be summed up as follows: That the court erred in the conclusion of fact that J. M. Williamson partitioned out the whole of the Robbins survey among the heirs of his first wife to satisfy their interest in their mother's estate; that there was error in the conclusion of law that the heirs of Mary A. Williamson had a superior title to plaintiffs in the land in controversy; and that there was error in rendering judgment for defendant for all the land except one-half interest in 22 acres, three-fourths acre, and 1⅕ acres of the land.

These assignments bring us to the main question in the case: Did the court decree to plaintiffs all the land they were entitled to under the facts of the case?

We have already seen that the heirs of the first wife were equitably entitled to the whole of the Robbins 320 acres survey, and should have recovered it on partition with their father, and that defendants in this suit occupy the place of such heirs, so far as the right to the land is concerned, and that plaintiffs occupy the place of their father.

J. M. Williamson executed deeds to specific tracts of the Robbins to the heirs of Mary A. Williamson as follows: To Julius, July 27, 1878, 12 acres; to John T. and Mary B. Williamson, July, 1879, 97½ acres; to Dolly Thrasher, formerly Williamson, no date, 48.25 acres; to W. G. Williamson, August 29, 1879, 48.7 acres.

The statement of facts does not show what, if anything, was stated as the consideration of the deed to Dolly Thrasher. The consideration stated in the deed to W. G. Williamson is $1 and natural love and affection. The deeds to John T. and Mollie B. state that they are in full satisfaction of all their interest in their mother's community estate, and the deed to Julius Williamson states that it is in full satisfaction of all his interest in lands of her community then held by J. M. Williamson. Herndon produced deeds from these heirs for the several tracts of land so conveyed to them, all for valuable consideration. J. M. Williamson for value in 1880 (February 18) conveyed to W. S. Herndon 22 acres of the Robbins, and in 1880, 3½ acres, parts of the Robbins and Gilbert; how much of each is not stated. By the deeds to the heirs of Mary A. Williamson a fraction over 206 acres was conveyed to them.

J. M. Williamson on March 8, 1881, conveyed to W. G. Williamson by metes and bounds other 68 acres of the Robbins, "it being the balance of the Robbins survey that I now own, having heretofore sold all but this." The consideration expressed in this deed is $340, to be paid by notes due in the following December. This land was also conveyed to Herndon for a valuable consideration. J. M. Williamson and W.

G. Williamson conveyed to E. S. and P. W. Rowland, April 12, 1881, for value, certain $1\frac{7}{35}$ acres out of the foregoing 68 acres (which the Rowlands conveyed to Herndon for value).

The court below construed the last deed for "68 acres more or less" by J. M. to W. G. Williamson as conveying all of the Robbins 320 acres not before conveyed by J. M. Williamson, and this seems to be correct according to the terms of the deed itself. The court also decided that the deed, together with the former deed to him for $48\frac{7}{10}$ acres, was in fact intended to convey to him his equitable share in the land. We do not find in the statement of facts direct proof of this fact, but it seems that the deed formerly made to him for $48\frac{7}{10}$ acres of land was not his full quota of the land, nor did he receive it as such. He inherited from his brother Frank $4\frac{9}{10}$ acres, and from that appears, from his sister Mrs. Turner, who died in 1869, $1\frac{9}{10}$ acres. Apart from this, however, the evidence does not show what the values of the respective surveys first conveyed to the heirs were, nor what amount in value each was entitled to, to compensate them for their interests in the Gilbert 305 acres, which was proved to be of more value than the Robbins 320 acres. These facts show, judging from quantity only, that he did not receive the amount of land due him in the first deed. Considering values, the 68 acres, the balance of the survey, may have been the proper quantity. We can not, however, say that this is true, or that the "68 acres more or less" were deeded to him as his complement of the land. It is fairly inferable from the testimony that he was entitled to considerably more land than he received by the former deed to him, and the same may be said of Mrs. Yancy. The evidence is silent as to the values of the respective surveys deeded to the heirs, and as to how much, according to value, each of them received less than he was entitled to. They were all together entitled to more land than was contained in the Robbins survey. It devolved upon plaintiffs to show how much of the land they could recover of defendants, and specially to show that including the last conveyance to W. G. Williamson he had received more than his complement of the land. Herndon claimed under him all the undisposed of balance of the survey, and could assert his equities; and besides, he and the other defendants claimed the specific tracts previously deeded to the heirs. Plaintiffs were required to show enough to recover some definite amount of land or on what account their rights rested. This follows from the fact that after the conveyance by their father of the 305 acres of the Gilbert survey without accounting to the first set of children for their part of the proceeds, they (the children of the second marriage and their mother by virtue of J. M. Williamson's deed of gift to them) would be entitled to *none* of the Robbins survey. If there were any facts intervening that would change their rights and inure to the deed of gift, it was their duty to prove them.

It does not appear from the testimony what quantity, if any, W. G. Williamson received of the land that they should recover.

If Mrs. Turner died without issue surviving, J. M. Williamson inherited from her a portion of her rights, and her mother's children surviving a portion, her husband one-half. If J. M. Williamson so inherited, it was before the deed to his second wife and children, and that much of the land would pass by the deed. He also inherited from his son Frank, who died single and without issue, one-half of his share, the other half descending to his brothers and sisters of the whole-blood. This was after the deed of gift without warranty, and the land so inherited by J. M. Williamson would not inure to the benefit of the deed, but passed the deed to W. G. Williamson for the "68 acres more or less." In the settlement with John T., Julius, and Mollie B., he saved such parts of the land as they were entitled to over and above that conveyed to them. The amount so saved would go into the residue, to abide partition with the other two heirs not settled with. Plaintiffs have not shown that W. G. Williamson's interest herein represented by defendants was overpaid by the last deed to him, or by both deeds to him. Until plaintiffs show that the land so redeemed, together with other lands conveyed to him, overpaid him, they can not recover of him or his vendees, defendants, except it may be the amount, if any, inherited by his father from Mrs. Turner, which will not exceed the amount adjudged to plaintiffs by the court. The evidence failed to define the rights of plaintiffs other than has been stated.

The judgment of the court was not erroneous; it should be affirmed, though not upon the grounds as found by the court below. This conclusion eliminates other assignments of error not herein disposed of, except one. It is claimed that the court erred in adjudging all costs of suit against plaintiffs. The judgment taxed all costs incurred by Allen and the railway company against plaintiffs, and all other costs against them and defendant Herndon. There was no error as assigned.

. Our opinion is that the judgment of the lower court should be affirmed. It will be noted that plaintiffs do not claim that there was error in limiting the partition ordered to certain specific surveys.

*Affirmed.*

Adopted November 10, 1891.

A motion for rehearing was refused.