ZARATE et al. v. VILLAREAL et al.

(Court of Civil Appeals of Texas. San Antonio. Jan. 15, 1913. Appellants' Motion for Rehearing, March 19, 1913. Appellees' Motion for Rehearing, April 1, 1913.)

1. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—PROPOSITIONS.

On appeal, in trespass to try title, a proposition relating to the question of limitations cannot be considered under an assignment of error based on the refusal of the court to strike out certain deeds.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

2. APPEAL AND ERROR (§ 742*) — PROPOSITIONS UNDER ASSIGNMENT OF ERROR.

On appeal, in trespass to try title, a proposition relating to defects in a Spanish instrument, thereby rendering void certain deeds based thereon, cannot be considered under an assignment of error based on the refusal of the court to strike out such subsequent deeds.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

3. APPEAL AND ERROR (§ 692*)—BILL OF EXCEPTIONS—QUESTION TO WITNESS.

Where the bill of exceptions fails to show what the answer of the witness would have been to a question objected to, no error is shown.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2905–2909; Dec. Dig. § 692.*]

4. APPEAL AND ERROR (§ 216*)—INSTRUCTIONS—NECESSITY OF REQUEST.

Though the court fails to instruct as to duress in procuring certain deeds relied on in trespass to try title, when the evidence demands it, no error is shown in the absence of a special request to charge.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 216;* Trial, Cent. Dig. §§ 627, 631, 635.]

5. APPEAL AND ERROR (§ 1053*)—HARMLESS ERROR—ASSIGNMENTS OF ERROR.

Assignments of error, based on objection to the validity of instruments admitted in evidence in trespass to try title, present no error where the court permitted no recovery by reason of the instrument.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4178–4184; Dec. Dig. § 1053.*]

6. APPEAL AND ERROR (§ 216*) — INSTRUCTIONS—NECESSITY OF REQUEST.

In trespass to try title, an assignment of error to the refusal of the court to strike out a part of a deed because not signed by two persons, who should have signed it, will not be considered in absence of a request to submit the question of its effect as against those not signing.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 216;* Trial, Cent. Dig. §§ 627, 631, 635.]

7. TRESPASS TO TRY TITLE (§ 40*) — ADMISSIONS—RECITALS IN DEED.

Defendants, in trespass to try title, may show a verbal partition between the heirs of the original patentee, under whom all parties claim to show an admission of their interest by plaintiffs or their predecessor, where the court permits no recovery by virtue of such partition.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 55–61; Dec. Dig. § 40.*]

8. TAXATION (§ 789*)—TAX DEEDS—ADMISSIBILITY OF EVIDENCE.

Unless evidence is offered to show that the requirements of the law with reference to sale for taxes had been complied with, so that a valid conveyance could be made, a tax deed is no evidence of title.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. §§ 1556–1569; Dec. Dig. § 789.*]

9. APPEAL AND ERROR (§ 263*)—EXCEPTIONS—CHARGE AFTER SUBMISSION OF CASE.

An oral charge to the jury, after submission of the cause, will not be available as error, in absence of exception thereto at the time and a bill of exceptions taken.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1516–1523, 1525–1532; Dec. Dig. § 263.*]

10. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR—CHARGE AFTER SUBMISSION OF CASE.

Though an oral charge to the jury, after submission of the cause, is error, it will not be considered prejudicial, where the court has no means of determining whether the charge, as actually given, was erroneous.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

11. JURY (§ 90*)—DISQUALIFICATION—RELATIONSHIP.

Where a juror is related in the third degree to a person who owns a house built on the land in controversy by permission of defendant, the juror is disqualified.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 413–418, 422; Dec. Dig. § 90.*]

12. JURY (§ 149*) — MOTION TO WITHDRAW JUROR—DISQUALIFICATION SHOWN BY EVIDENCE.

Since the statute does not permit a trial to proceed with less than 12 jurors, except in case jurors, not exceeding 3, may die or be disabled, and disqualification is not provided for, a motion to withdraw a juror for interest developed by the evidence would be denied, as the only remedy would be to move to withdraw announcement of ready for trial and have the case withdrawn from the jury and another trial ordered.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 635–637; Dec. Dig. § 149.*]

13. DEEDS (§ 38*)—CERTAINTY OF DESCRIPTION.

In trespass to try title, a deed describing the land as situated "in the pasture of the Lucero de Alameda in the county of Hidalgo" is too uncertain to be admissible in evidence, in absence of extrinsic evidence to identify the land.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 65–79; Dec. Dig. § 38.*]

14. DEEDS (§ 118*)—DESCRIPTION—EVIDENCE TO AID.

In trespass to try title, where defendant relies on a deed as conveying part of the tract claimed by plaintiff, and such deed is too uncertain by itself to identify the tract conveyed, the burden of showing extrinsic facts to identify the tract is on defendant.

[Ed. Note.—For other cases, see Deeds, Dec. Dig. § 118.*]

15. ESTOPPEL (§ 38*)—AFTER-ACQUIRED TITLE.

Where a grantor attempts by warranty deed, to convey an estate as heir before the death of his ancestor, the grantee will get by estoppel whatever title descends to such grantor after the death of the ancestor.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 99–107; Dec. Dig. § 38.*]

16. DESCENT AND DISTRIBUTION (§ 19*)—PRESUMPTION.

There is no presumption that a deceased person made a will.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 11–13; Dec. Dig. § 19.*]

17. DESCENT AND DISTRIBUTION (§ 19*) — PROOF OF INTESTACY.

An heir is not required, before taking as heir, to prove that the deceased was intestate.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 11–13; Dec. Dig. § 19.*]

18. DESCENT AND DISTRIBUTION (§ 19*) — PROOF OF INTESTACY — PURCHASER FROM HEIR.

A purchaser from an heir under a deed sufficient to carry the after-acquired title would

not be required to prove that the ancestor was intestate before he could rely on his deed.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 11–13; Dec. Dig. § 19.*]

**19. TRESPASS TO TRY TITLE (§ 40*)—ADMISSIBILITY OF DEED—TRUSTS.**

In trespass to try title, in which plaintiffs claimed title as heirs of an original patentee, a deed from the heir of a brother-in-law of the original patentee, made and recorded before the patentee's death, is admissible on the question whether the original patentee held the grant in trust as to two-thirds thereof for the brother-in-law.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 55–61; Dec. Dig. § 40.*]

**20. LOST INSTRUMENTS (§ 23*)—ADMISSIBILITY OF DEED.**

Where, in trespass to try title, defendant's claim to part of the property is based on a lost Spanish instrument, a deed given by the grantee claiming under such instrument to his heir is admissible as a circumstance to show the existence of the lost deed.

[Ed. Note.—For other cases, see Lost Instruments, Cent. Dig. §§ 51–57; Dec. Dig. § 23.*]

**21. TRESPASS TO TRY TITLE (§ 40*) — EVIDENCE—DEED FROM COTENANT.**

In trespass to try title, in which a deed from a cotenant to his heir is introduced, it is admissible without showing the interest of the cotenant, where some of the cotenants are not parties.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 55–61; Dec. Dig. § 40.*]

**22. TRESPASS TO TRY TITLE (§ 40*) — EVIDENCE—RECITALS IN DEFECTIVE DEEDS.**

In trespass to try title, in which plaintiffs claim as heirs of the original patentee, and defendants claim under a brother-in-law of the original patentee, alleged to have an interest in the land, an instrument, though, by defective execution, not entitled to be admitted as a deed, is admissible where it recites the claim of ownership to the tract made by the brother-in-law; the recital tending to bring home to the original patentee that a claim was asserted.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 55–61; Dec. Dig. § 40.*]

**23. LOST INSTRUMENTS (§ 23*)—EVIDENCE OF EXECUTION.**

Evidence *held* insufficient to prove the execution of a lost deed.

[Ed. Note.—For other cases, see Lost Instruments, Cent. Dig. §§ 51–57; Dec. Dig. § 23.*]

**24. EVIDENCE (§ 460*)—DEEDS—IDENTITY OF DESCRIPTION—EXTRINSIC EVIDENCE.**

In trespass to try title, though the description in a deed does not of itself show that it related to the lands in controversy, it is admissible if extrinsic evidence identifies the land as relating thereto.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 2115–2128; Dec. Dig. § 460.*]

**25. TRESPASS TO TRY TITLE (§ 40*) — EVIDENCE—ADMISSIONS IN DEEDS.**

In trespass to try title, deeds reciting a less interest than that claimed by the party executing the deed are admissible as admissions against interest.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 55–61; Dec. Dig. § 40.*]

**26. TRESPASS TO TRY TITLE (§ 40*) — EVIDENCE—ADMISSIONS IN DEEDS.**

In trespass to try title, a deed executed by one of the claimants to the land, recognizing in its recitals the title of the children of one from whom the opposite parties claimed title, is admissible as an admission against interest.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 55–61; Dec. Dig. § 40.*]

**27. EVIDENCE (§ 37*) — JUDICIAL NOTICE — FOREIGN LAWS.**

The court judicially knows what the law was in the state of Tamaulipas prior to the independence of Texas.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. § 52; Dec. Dig. § 37;* Appeal and Error, Cent. Dig. § 2959.]

**28. EVIDENCE (§ 67*)—PRESUMPTIONS—FOREIGN LAW.**

There is a presumption that a rule of foreign law shown to exist does not change.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 87, 88, 103; Dec. Dig. § 67.*]

**29. APPEAL AND ERROR (§ 1051*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.**

In trespass to try title, the admission of parol evidence as to the laws of protocolization of instruments in force in Mexico is harmless, if error, where the tract of land in dispute is situated in what was the state of Tamaulipas, and the court judicially knows what the law was in that state before the independence of Texas, and the law, as proved, was the same as the court judicially knew.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4161–4170; Dec. Dig. § 1051.*]

**30. TRIAL (§ 91*)—RECEPTION OF EVIDENCE—NECESSITY OF OBJECTION.**

Where a witness was permitted to testify that he knew a certain person personally, and that such person was not the character of a man to make a false certificate, which evidence was not objected to, it will not be stricken out on motion alleging as grounds only that the evidence was incompetent.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 242–244, 252; Dec. Dig. § 91.*]

**31. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.**

Any error in the admission of the mere statement that the reputation of a certain person was good is harmless, where witnesses for appellant testified that he was a law-abiding man.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1068, 1069, 4153–4157, 4166; Dec. Dig. § 1050.*]

**32. TRIAL (§ 194*) — INSTRUCTIONS — WEIGHT OF THE EVIDENCE.**

A special charge that the jury were the exclusive judges of the mental development, capacity, and discretion of all the witnesses and parties, and, to determine the same, the jury might consider their answers, their attitude, and their general appearance, was a comment on the weight of the testimony and properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 413, 436. 439–441, 446–454, 456–466; Dec. Dig. § 194.*]

**33. TRIAL (§ 261*)—INSTRUCTIONS—REQUESTS.**

In trespass to try title, the court is not required to give a charge covering and including, in its general terms, deeds to which it is not applicable.

[Ed. Note.—For other cases, see Trial, Cent. Cent. Dig. §§ 484, 660, 671, 673, 675; Dec. Dig. § 261.*]

**34. TRIAL (§ 252*)—INSTRUCTIONS—APPLICABILITY TO EVIDENCE.**

In trespass to try title, a requested instruction containing a statement of general

principles not applied to any of the deeds in evidence is properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 505, 596–612; Dec. Dig. § 252.*]

35. APPEAL AND ERROR (§ 216*)—INSTRUCTIONS—NECESSITY OF REQUEST.

Where, in trespass to try title, a partition deed is admitted for the consideration of the jury, but not to show title, an assignment of error that the deed was obtained by duress, making it inadmissible for any purpose, is properly overruled in the absence of a requested instruction on such theory.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 216;* Trial, Cent. Dig. §§ 627, 631, 635.]

36. APPEAL AND ERROR (§ 216*) — INSTRUCTIONS—NECESSITY OF REQUEST.

Where, in trespass to try title, a partition deed, though not competent to prove title because of defective execution, was admitted for other purposes, an assignment of error that the deed was admitted against persons not parties to the deed will not be noticed in absence of a charge requesting its limitation.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 216;* Trial, Cent. Dig. §§ 627, 631, 635.]

37. TRIAL (§ 261*)—INSTRUCTIONS—ERRONEOUS REQUESTS.

A requested charge, a portion of which is on the weight of the evidence, is properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 484, 660, 671, 673, 675; Dec. Dig. § 261.*]

38. TRIAL (§ 251*)—INSTRUCTIONS—APPLICABILITY TO CASE.

Requested instructions, not applicable to any theory on which recovery might be had, are properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

39. TRIAL (§ 252*)—INSTRUCTIONS—APPLICABILITY TO FACTS.

A special charge defining estoppel is properly refused when not made applicable to any facts in the case.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 565, 596–612; Dec. Dig. § 252.*]

40. APPEAL AND ERROR (§ 742*) — PROPOSITIONS UNDER ASSIGNMENTS OF ERROR.

An assignment of error, having no proposition or statement submitted thereunder, and not referring to other propositions or statements, will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

41. TRESPASS TO TRY TITLE (§ 47*) — JUDGMENT—RIGHT TO ACREAGE NOT PROVEN.

Where, in trespass to try title, defendants claim only two-thirds of the tract in controversy shown to have been held by the original owners as tenants in common, plaintiff is entitled to one-third of the land, but not to acreage which, by the exclusion of deeds, defendant was unable to prove title to, since it will be considered as belonging to some one else.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 69–71; Dec. Dig. § 47.*]

42. APPEAL AND ERROR (§ 1056*)—HARMLESS ERROR—ADMISSION OF DEEDS.

Where, in trespass to try title, a few deeds were improperly admitted, the error will be considered harmless where, taking all the deeds in evidence, it is shown that their exclusion would not change the result found.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4187–4193; Dec. Dig. § 1056.*]

43. APPEAL AND ERROR (§ 1151*)—REFORMATION OF JUDGMENT IN APPELLATE COURT.

Where, in trespass to try title, the court erroneously permits the jury to find for the defendant for all the land in controversy, when defendant admitted title to one-third in plaintiff, the error will be corrected in the appellate court, and the judgment affirmed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4498–4506; Dec. Dig. § 1151.*]

Appellees' Motion for Rehearing.

44. TRESPASS TO TRY TITLE (§ 47*)—AMOUNT OF RECOVERY—TENANCY IN COMMON.

Under Rev. Civ. St. 1911, arts. 7753, 7754, providing that when defendants claim the whole premises, and the plaintiffs show themselves entitled to recover part, the plaintiff shall recover such part, and that, when there are two or more plaintiffs and defendants, any one or more of the plaintiffs may recover against one or more of the defendants the premises or any interest therein, etc., in trespass to try title, in which plaintiffs claimed the whole tract, and defendants pleaded not guilty, on proof that the whole tract was held in common, and that defendants had a two-thirds interest in the tract, plaintiffs may recover the one-third interest proved by them and be put into possession with the defendants as tenants in common, and hence a judgment for defendants for all the land was erroneous.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 69–71; Dec.Dig. § 47.*]

45. COSTS (§ 32*)—RECOVERY OF LAND—PARTIAL SUCCESS.

Defendants, in trespass to try title, who pleaded not guilty to plaintiffs' claim to the whole tract in controversy, may not complain that plaintiffs recover costs of suit on judgment for only one-third of the tract sued for, where defendants did not disclaim.

[Ed. Note.—For other cases, see Costs, Cent. Dig. §§ 108–132; Dec. Dig. § 32.*]

Appeal from District Court, Brooks County; W. B. Hopkins, Judge.

Trespass to try title by Juan Zarate and others against Antonio Villareal and others. From a judgment for defendants, plaintiffs appeal. Reformed and affirmed.

T. Wesley Hook, of Falfurrias, for appellants. Chapin & Brown, of Mission, and Clark & Bliss, of San Antonio, for appellees.

MOURSUND, J. This is a suit in trespass to try title, instituted by Juan Zarate and Damasio Zarate for themselves individually, and as attorney in fact for 19 others, against Antonio Villareal and 19 others to recover 10,619.23 acres, undivided, out of a tract of land containing about three leagues, situated in Brooks county, Tex., and known as La Alameda, Pilar Zarate y Bayerena original grantee and patentee, and to cancel a certain instrument designated a partition deed.

Plaintiffs alleged the patenting of the La Alameda tract to Pilar Zarate y Bayerena by the state of Texas in 1881, and the recording of such patent during the same year;

that the grantee in said patent was dead, and plaintiffs are his only heirs; that in 1886 D. R. Fant purchased from the tax collector of Hidalgo county, Tex., 11,276 acres, undivided, in this tract, by tax deed, and the interest so acquired by said Fant descended to his heirs, and was conveyed by their attorney in fact to plaintiffs; that an instrument recorded in Book D, p. 440, of Deed Records of Hidalgo county, styled, "Partition deed of real estate between the heirs of Pilar Zarate, deceased, and Pilar Zarate, Manuel Zarate, and Francisco Elizondo, all deceased, of the Rancho, called La Alameda," if executed at all, was executed without reading or consideration, under duress, namely, fear of unlawful imprisonment, and, if acknowledged at all, was acknowledged before interested parties, and the witnesses thereto, if there were any, were interested parties, and the signers, if there were any, did not request the witnesses to act as witnesses, nor acknowledge the execution of the instrument before them, and the grantees named in said instrument were dead on the date of said instrument, and Serapio Cantu, whose name appears as one of the signers of said instrument, was a minor, and Josefa Cantu, whose name also appears as a signer, was aged and stricken with grief, and all whose names appear as signers of said instrument were ignorant, illiterate, timid, and mentally weak; that defendants during the ten years preceding August 17, 1909, had been guilty of many trespasses upon said land, finally fencing off and withholding from plaintiffs a large portion thereof. Defendants filed demurrer, general denial, plea of not guilty, and also pleaded the statutes of limitation of three, five, and ten years. Verdict was returned in favor of defendants, and judgment entered accordingly, from which plaintiffs appealed.

The first 12 assignments of error are all based upon the court's ruling in refusing plaintiffs' motion to strike out all the deeds executed by the heirs of Francisco Elizondo, or by the heirs of Manuel Zarate, prior to May 21, 1885, and all evidence depending for its validity upon such deeds. The deeds are described in bill of exceptions No. 26. The reasons urged by plaintiffs for the exclusion of said deeds, as shown by said bill of exceptions, briefly stated, are as follows: (1) Pilar Zarate y Bayerena secured a patent to the entire La Alameda tract in 1881, describing same by metes and bounds, and he and his heirs had title by limitation. (2) Prior to May 21, 1885, the only title held by any, except Pilar Zarate y Bayerena, and his grantee, Angel Ruis, and his heirs, depended upon a Spanish instrument, which was objected to as void for various reasons. (3) The evidence is immaterial, irrelevant, and incompetent. It will be noted that none of the objections go to the form of the deeds which plaintiffs moved to have excluded, nor to the acknowledgments to same, but all really are based upon two theories, one that the Spanish instrument was invalid and conveyed no title, and the other that, if it did convey any title, the grantee in the patent and his heirs reacquired, by limitation after 1881, the title parted with by such Spanish instrument.

[1] The propositions under the first assignment all relate to the question whether the plaintiffs had title by limitation. This issue was not submitted to the jury, probably because the court was of the opinion that, under plaintiff's pleading, it was not raised. Mayes v. Paxton, 78 Tex. 196, 14 S. W. 568; Molino v. Benavides, 94 Tex. 413, 60 S. W. 875; Erp v. Tillman, 103 Tex. 584, 131 S. W. 1057; Arthur v. Ridge, 40 Tex. Civ. App. 137, 89 S. W. 15. But, be the reason what it may, we cannot consider the question of limitation under an assignment based upon the refusal of the court to strike out certain deeds.

[2] The propositions under assignments 2 to 12, inclusive, all relate to defects in the Spanish instrument, and properly belong under an assignment directly complaining of the admission in evidence of said instrument. If said instrument was admitted without objection being made and exception saved, so as to require consideration in this court, then the same is in evidence, and this court cannot hold that it was incorrectly admitted under assignments, all of which are based upon the failure to strike out subsequent evidence. The assignments are overruled.

[3] The thirteenth assignment complains because the court refused to permit the witness Rosaria Altamira, a witness for plaintiffs, to answer the question whether she had ever heard Pilar Zarate y Bayerena say whether he had ever sold any interest in the land to either Rafael Flores Salinas, Manuel Zarate, or Francisco Elizondo. The bill of exceptions fails to show what the answer of the witness would have been, for which reason no error is shown. McAuley v. Harris, 71 Tex. 639, 9 S. W. 679; Cheek v. Herndon, 82 Tex. 152, 17 S. W. 763; Shippers Co. v. Davidson, 35 Tex. Civ. App. 564, 80 S. W. 1032.

Assignments 14 to 20, inclusive, are based upon the ruling of the court in admitting in evidence the certified copy from the records of Hidalgo county of the so-called partition deed mentioned in plaintiffs' petition. The charge of the court does not permit any recovery by virtue of the said instrument, and therefore the question arises only as to its admissibility as an admission by the signers thereof of a previous grant having been made by their ancestor.

[4] The fourteenth assignment is based upon the objection to said instrument that it was procured by duress. The evidence was conflicting on this issue, and we cannot say, as a matter of law, that duress was used. The court, after hearing the evidence and deciding that same was not sufficient to show

duress as a matter of law, should have let the instrument and the evidence on the issue of duress go to the jury under instructions defining duress and telling them that, if they, under such instructions, found the instrument to have been procured by duress, then not to consider the same for any purpose whatever. The failure of the court to so charge the jury, however, is an omission of which advantage cannot be taken because no special charge was offered. The assignment is overruled.

The identity of the instrument of which a copy was offered in evidence, with the instrument executed by Juan Zarate and others, was sufficiently proven, and so was the execution of the original, and assignments 15 and 16 are overruled.

[5] Assignments 17, 18, 19, and 20 are based upon objections to the validity of the so-called partition deed as a deed or conveyance. As the court permitted no recovery by reason of this instrument, and therefore gave it no effect as a deed, these assignments show no error and are overruled.

What we have just said applies also to assignment No. 22. The court did not authorize any recovery on the ground of estoppel of the heirs by virtue of the instrument in question, so this assignment shows no error.

[6] Assignment No. 23 complains because the court refused the motion to strike out of evidence that part of the so-called partition deed depending for its validity upon its signing by Manuel Zarate and Lucia Zarate, because they were two of the children of Pilar Zarate y Bayerena who did not sign such instrument. No proposition of law is submitted under this assignment; but, contrary to the rules, we are referred to the bill of exceptions for the proposition. We fail to see how any part of the instrument could depend for its validity upon the signing of same by persons who did not sign it, so do not know what was sought to be struck out. Probably appellants' counsel had the idea that the instrument could not be considered by the jury for any purpose as against those not signing it, but, if so, he should have asked an appropriate instruction to be submitted to the jury. The assignment is overruled.

What we have said in discussing assignments 17 to 20 applies to assignments 24 and 25, and they are overruled.

[7] The twenty-ninth assignment complains of the failure of the court to grant the motion of appellants to strike out all evidence relating to a verbal partition of the La Alameda grant. The proposition under this assignment is as follows: "The very basis of partition is co-ownership; and it cannot confer upon one or take from the other any values, except that of definite location of the exact interests held before partition." Juan Zarate, one of the plaintiffs, testified he represented those of his brothers and sisters in said partition who were not present when it was made, and admitted they told him verbally to do so, as he was the oldest of those living there. We think this verbal partition was an admission of the interest of defendants in the land, which could be properly considered by the jury in connection with all the other facts and circumstances in passing upon the question whether Manuel Zarate and Francisco Elizondo, under whom defendants claim, each owned the one-third interest in the entire tract. The court did not authorize any recovery by virtue of this partition. The assignment is overruled.

What we have just said applies to the twenty-seventh assignment, under which the following proposition appears: "There can be no binding partition of realty unless all the owners participate therein in a voluntary partition, or are made parties thereto in a court partition." The court did not authorize any land to be held by defendants by virtue of the partition.

The twenty-eighth assignment shows no error, and is overruled.

[8] The twenty-ninth and thirtieth assignments complain of the ruling of the court in refusing to permit appellants to introduce in evidence the tax deed from Jas. L. Dougherty to D. R. Fant, dated June 1, 1886. The objections made were, first, that it had not been shown that any requirements had been complied with in order to make it a valid conveyance, it being a tax deed; second, that it was void for want of description and because it does not identify the land. No evidence was offered tending to show that the requirements of the law, with reference to sales for taxes, had been complied with, so that a valid conveyance could be made, and, under the decisions of our courts, the deed alone was no evidence of title and was properly excluded. Pratt v. Jones, 64 Tex. 697; Meredith v. Coker, 65 Tex. 29; Eustis v. City of Henrietta, 90 Tex. 473, 39 S. W. 567; Davies' Executors v. City of Galveston, 16 Tex. Civ. App. 18, 41 S. W. 145; Davis v. G., H. & S. A. Ry. Co., 42 Tex. Civ. App. 55, 93 S. W. 222. The assignments are overruled.

The thirty-first assignment complains because the court failed to grant plaintiffs' motion for a new trial on the ground that when the jury, after going out, came into court for specific instructions, the court gave such instructions orally. Attached to the motion were affidavits by four jurors to the effect that they believed the cause was decided as it was partly because of an oral instruction given by the trial judge; that shortly after withdrawing to consider the evidence, the contention arose whether a deed or instrument in evidence should be accepted or questioned, some of the jurors maintaining that the fact that the deed was in evidence demonstrated that all ques-

tions as to its genuineness and execution had been settled for the jury by the court, and could not be reviewed again by them, other jurors taking the negative of the proposition, the matter was submitted to the court, and, after the said oral instruction, all of the jury stated they were expected to believe such instruments admitted in evidence were to be taken by the jury for what they purported to be, and were to be considered as proof of their contents.

[9, 10] The charge given by the court is not shown; not even the substance being stated. We cannot take the conclusion of the jurors on the question of their duty, arrived at by them upon consideration of such oral instruction, and from such conclusion infer what the charge was. Again, the affidavits fail to show to which instruments the inquiry extended. We are therefore at a complete loss to know whether the action of the court resulted in injury to appellants of which they would have a right to complain. While the Act of 1903 (Acts 28th Leg. c. 39), amending article 1316, Sayles' Statutes, made it mandatory to give a charge in civil cases unless same was waived, the mere fact that said amendment specified the charge should be in writing added nothing to the law on that subject, as article 1317, Sayles' Statutes, already provided that the charge should be in writing. Therefore, the decisions of our courts, prior to such amendment, are still applicable on the question of whether the giving of an oral charge constitutes error. For discussion of this subject, see Schwartzlose v. Mehlitz, 81 S. W. 68. On the proposition that an oral charge is not ground for reversal unless it appears that injury resulted therefrom, we cite Hurst v. Benson, 27 Tex. Civ. App. 230, 65 S. W. 76; Railway v. Dunlavy, 56 Tex. 256. In Hurst v. Benson, supra, the court approves the holding in Renn v. Samos, 42 Tex. 104, to the effect that a party wishing to complain of the giving of an instruction orally must except at the time. While the charge itself is regarded as excepted to and subject to revision for errors therein, without the necessity of a bill of exceptions, it appears to us that the act of the judge in giving the same orally should be excepted to at the time, and a bill of exceptions taken. We overrule the assignment, because appellant is in no position to complain on account of this additional instruction being oral, and because we have no means of determining whether the charge itself was erroneous, and therefore cannot say that appellants suffered injury.

[11, 12] The thirty-second assignment complains on account of the court's denial of appellants' motion to remove one of the jurors, because the evidence developed that a relative of the juror, within the third degree of consanguinity, owns, or claims to own, a house on the land involved in the suit, and such relative had testified that he built with the permission of one of the defendants, and would probably lose his house if the defendants lost this case. It is true that the statutory disqualification applies to jurors related within the third degree to a party to the suit, and in this case the relative of the juror was not a party to the suit. However, to the extent of the value of his house, he was as much an interested party as if he had been a party, and we think the juror was disqualified. The motion was merely to the effect that he be removed. The statute does not authorize a trial to proceed with less than 12 jurors, except where jurors, not exceeding 3, may die or be disabled from sitting. Disqualification is not provided for, and the only remedy the appellants had was by motion for permission to withdraw announcement of ready for trial, and to have the case withdrawn from the jury and another trial ordered. The court could not grant appellants' motion, and the assignment is therefore overruled.

The thirty-third assignment is overruled for the same reason as the thirteenth.

[13, 14] Assignments 34, 35, 36, and 37 are all based upon the admission in evidence of a deed from Jesus Elizondo to Alexander M. Headley, dated July 4, 1876, over the objections of appellant, which were as follows: "(1) No foundation has been laid for the evidence. (2) The description is so uncertain, vague, and ambiguous that from a perusal one cannot ascertain definitely the land to be conveyed. (3) The instrument has not been duly proved to entitle it to be recorded. (4) The instrument is not duly acknowledged." We sustain the assignment based upon the second objection. The land is described as situated "in the pasture of the Lucero de Alameda in the county of Hidalgo," state of Texas. Certainly this description is insufficient in itself to identify the land, and we are not aided by extrinsic evidence. The Lucero was a tract of land lying immediately north of the La Alameda tract, and was recited in a deed by Pilar Zarate y Bayerena to Ruiz to have been originally granted to —————— Elizondo. This recital, of course, is not evidence in favor of plaintiffs, but it was not incumbent on plaintiffs to show that Elizondo had no interest in the Lucero tract; that burden devolved upon defendants, if they wished thereby to show that the deed in question intended to convey land out of the La Alameda tract.

[15-18] The thirty-eighth and thirty-ninth assignments complain of the admission in evidence of deed from Nicanor Elizondo, one of the children of Francisco Elizondo, to A. M. Headley, dated April 16, 1883, recorded in Hidalgo county on May 24, 1883, conveying the interest inherited by him from his parents in the land in controversy. The objections made were: (1) There is no evidence to show that grantor's father was dead

at the time of the conveyance; (2) the amount of interest of grantor has not been proved, and the deed, if admitted at all, will have to be admitted with a modification indicating exactly the interest, if any, of said Nicanor Elizondo in the property. Appellant relies upon the cases of Ballard v. Carmichael, 83 Tex. 355, 18 S. W. 734, and McCoy v. Pease, 17 Tex. Civ. App. 307, 42 S. W. 659, which held deeds inadmissible because no title had been shown in the grantor. The ruling in such case is based upon the proposition of immateriality. Villalva v. Brown, 148 S. W. 1124. The question is whether a deed is material at the time it is offered in evidence. It may be offered as a link in a chain of title, or as a circumstance tending to prove the existence of some other fact material in the case. If this deed, at the time it is offered, is sufficient to convey any of the land in controversy, it is admissible for that purpose. This is not a case where there is no proof that the person is dead under whom title is claimed by inheritance, but one where the evidence shows that he is dead, that he died prior to April, 1884, date not given. The deed was made April 16, 1883, and recites that the grantor conveys all that certain, undivided interest, right and claim of whatsoever nature to which he is entitled by right of inheritance from his father, Francisco Elizondo, and his mother, Marta Ballerena, in the premises in controversy. It contains a general warranty clause. If this were construed to be a deed conveying the grantor's expectancy, title would vest in the grantee upon the death of his parents, or proportionately upon the death of one. Jenkins v. Adcock, 5 Tex. Civ. App. 466, 27 S. W. 21. If it be construed as a conveyance conveying a present interest, then under the authority of Jenkins v. Adcock, supra, it is not a quitclaim deed. It purports to convey an estate inherited by him from his parents, which, by reference to the number of brothers and sisters he had, is made definite as to amount. It contains the implied representation that his parents are dead and that they died intestate. Under these circumstances the deed, if made prior to the death of Francisco Elizondo, would upon his death vest the estate attempted to be conveyed thereby in the grantee by estoppel. The very estate which was sought to be conveyed would be afterwards acquired and would pass under the deed. Lindsay v. Freeman, 83 Tex. 259, 18 S. W. 727; Breen v. Morehead, 126 S. W. 650. There is no presumption that a deceased person made a will; nor is an heir required, before taking as heir, to prove that the deceased was intestate. Slayton v. Singleton, 72 Tex. 213, 9 S. W. 876; Kirby v. Blake, 53 Tex. Civ. App. 173, 115 S. W. 677. This being the case, the purchaser from an heir, under a deed sufficient to carry the after-acquired title vesting by inheritance, would not be required to prove intestacy any more than the heir would. Scates v. Fohn, 59 S. W. 837. See opinion on motion for rehearing. Therefore the heirship of grantor and death of his ancestor being established, the deed now considered was admissible in evidence, as it was sufficient to convey the title of the grantor by inheritance, whether same had vested at the time the deed was executed, as it no doubt had, or whether it vested afterwards.

[19, 20] This deed, being made and recorded in Hidalgo county a year before the death of Pilar Zarate y Bayerena, was also admissible as a circumstance to be considered in connection with the other facts and circumstances on the issues raised by defendants, viz.: First, whether the grant was acquired by plaintiffs' ancestor in trust for Manuel Zarate and Francisco Elizondo, his brother and brother-in-law, to the extent of two-thirds thereof; second, whether, after so acquiring the grant, he, by a Spanish instrument, which is now lost, conveyed to his brother Manuel and his brother-in-law, Francisco Elizondo, each one league out of said grant. Guffy Petroleum Co. v. Hooks, 47 Tex. Civ. App. 560, 106 S. W. 695.

[21] It was not necessary to qualify the admission of this deed by stating what interest the grantor had in the land in controversy, because the plaintiffs cannot recover from cotenants the interests of other tenants in common with them, not made parties to the suit. Boone v. Knox, 80 Tex. 642, 16 S. W. 448, 26 Am. St. Rep. 767; Bennett v. Virginia Co., 1 Tex. Civ. App. 321, 21 S. W. 126. The assignments are overruled.

The reasons given, in discussing the two preceding assignments, do not apply to the deed made in 1908, the admission of which is complained of in the fortieth assignment, by parties not even shown to be heirs of Francisco Elizondo, and the same is sustained.

[22] Assignments 41, 42, and 43 are overruled. The deed from Headley to Trevino was made in 1899, and was a conveyance of land, a portion of which was conveyed to him under the deed complained of in the thirty-eighth and thirty-ninth assignments. To that extent it conveyed title, and also constituted an assertion of ownership under the heirs of Francisco Elizondo, and we hold was admissible.

Assignments 44 to 48, inclusive, are based upon objections made to the admission in evidence of a certified copy of a Spanish document from Jesus Elizondo, one of the children of Francisco Elizondo, to Rafael Flores Salinas, dated November 21, 1871, recorded in Hidalgo county December 26, 1871. This instrument was not executed as required by our laws to make it a deed, not being signed by the grantor or acknowledged so as to make the name in the body of the instrument the signature, as the rule in announced in Newton v. Emerson, 66 Tex. 142, 18 S. W.

348, and approved in Couch v. Schwalbe, 111 S. W. 1049. The court admitted it as an ancient record to be considered as a circumstance in determining whether Jesus Elizondo ever executed and delivered such a deed to ·Rafael Flores Salinas. As the original instrument, if produced, would not be admissible as a deed, the copy from the record would not be admissible to prove the existence of a deed. However, this instrument recites the claim of ownership to the tract made by Francisco Elizondo and Manuel Ballerena, and we think was admissible as a circumstance tending by its record to bring home to Pilar Zarate y Bayerena the fact that the claim now asserted was then being asserted, and tending to prove the defendants' contention with respect to the transaction between him and Francisco Elizondo and Manuel Zarate. The assignments are therefore overruled.

The forty-ninth, fiftieth, and fifty-first assignments are overruled for reasons given in discussing assignments 38 and 39. The grantors are admitted to be heirs of Manuel Zarate, and by warranty deeds they undertake to convey a certain number of acres of the land in controversy; the one by Tomas Zarate reciting the death of his father, but the one by Elisio Zarate' containing no recital. The date of the death of Manuel Zarate is not proven; but the evidence shows he was dead in 1885. The deeds were made in 1882 and 1883. The deeds would carry the after-acquired title, if Manuel Zarate in fact was alive at the time they were made.

[23] The fifty-second and fifty-third assignments complain of the admission in evidence of a deed from Martin Rivas to Rafael Flores Salinas, dated July 15, 1890. No deed to Rivas was introduced in evidence, and the only evidence referred to by appellees to sustain its introduction is that of a witness who testified he believed he saw a deed from San Juana Zarate de Villareal in the hands of Rafael Flores Salinas. This is insufficient proof of the execution of a lost deed; besides, there is no evidence that San Juana Zarate de Villareal was the daughter of Manuel Zarate, named Juana. The assignments are sustained for the reasons given under the forty-ninth assignment.

[24] Assignment 54 is overruled. While the description on its face was insufficient, with the aid of extrinsic evidence showing that Pilar Zarate y Bayerena was also known as Pilar Zarate, and that an Alameda tract had been granted him in Hildalgo county, having environments mentioned in the deed, the jury was authorized to find that the deeds related ·to the land in controversy.

Assignments 55 to 60, inclusive, and 63 (No. 2), 64, 65, 66 (No. 2), 67, 69, and 70 are overruled. Rafael Flores· Salinas had title to a portion of the land claimed by him, at least as shown by discussion of assignments 49, 50, and 51, also by deed from Secunduco

Zarate. Some of the deeds objected to under these assignments were made by him, others by his children and his grandchildren. It was shown at the trial that he and his daughter, Librada, were dead, but the dates when they died were not shown. Under the rule with respect to after-acquired titles, mentioned in discussing assignments 38 and 39, the deeds were admissible to show title.

Assignments 61, 63 (No. 1), 66 (No. 1), 68, 71, and 72 are overruled for the reasons given in the closing portion of the discussion of assignments 38 and 39.

Assignment 73 complains of the admission of deeds by plaintiff Damasio Zarate to Renfro and Wren, reciting that he conveys all his interest in the La Alameda tract, except 200 acres,.and that the amount so conveyed is 354½ acres.

Assignment 74 complains of the admission of a deed from Manuel Zarate to Juan Zarate, both plaintiffs, conveying 277¼ acres out of La Alameda tract, and reciting that his intention was to convey all the interest therein inherited by him from his father.

Assignment 75 complains of the admission of a deed from Santos Zarate, plaintiff, to Julian Cantu, conveying 553½ acres in La Alameda, and reciting that it was all her interest in said tract acquired by inheritance "from father Pilar Zarate and Josefa Salinas." (Josefa Salinas was the wife of Pilar Zarate y Bayerena, and the mother of Santos Zarate.)

Assignment 76 complains of the admission of a deed from Juan Zarate, plaintiff, to R. B. Renfro, conveying an undivided half interest in the lands purchased by grantor from Nicanor Elizondo Zarate and Jesus Elizondo Zarate in the Alameda tract; said one-half being 350 acres more or less.

[25, 26] All of these deeds were admissible as admissions against interest; the first three showing, or tending to show, that the grantor in each only claimed an interest in one league instead of three, as the interest inherited by each of Pilar Zarate y Bayerena's children would approximate 553½ acres in one league. The last-named deed evidences an admission on the part of one of plaintiffs that he purchased from and recognized the title of two of the children of Francisco Elizondo. The case of Pope v. Riggs, 43 S. W. 306, cited by appellant, is not in point, because in that case the deeds excluded by the court were offered for the purpose of showing the habit of one of the plaintiffs to sell the same land to different parties, and to reclaim land once sold. We overrule the four assignments.

Assignment 77 is overruled.

[27-29] Assignment 78 complains of the admission of the testimony of J. T. Canales, one of the counsel for defendants, in regard to the laws of protocolization of instruments in force in Mexico, over the objection that such laws could not be proved by parol ev-

idence. No statement accompanies this assignment; but upon examination of the testimony, as contained in the statement of facts, we find the same to be in accord with what we judicially know the law to have been in Tamaulipas prior to the independence of Texas, at which time the land in dispute was a portion of the state of Tamaulipas. "A fact of a peculiar nature, to which the presumption against change is held to apply, is the existence of a rule of foreign law. Where such a rule, written or unwritten, has been shown to the courts of a given forum, and has been judicially recognized or assumed by them to exist in a sister state or foreign country, it will be assumed, in the absence of evidence to the contrary, that it has not ceased to be the law." Chamberlayne, Modern Law of Evidence, vol. 2, § 1038. This being the law, no harm has resulted in the admission of the evidence in question, and the assignment is overruled.

The seventy-ninth and eighty-fifth assignments are overruled, because the bill of exceptions fails to show what the answer of the witness would have been to the question excluded.

Assignments 80 and 81 show no error, and are overruled.

[30, 31] The eighty-second assignment complains of the failure of the court to grant a motion to strike out the evidence of John I. Kleiber in regard to the character and reputation of John P. Kelsey and Cruz Tijerina. The bill of exceptions, as qualified, shows that the witness was asked whether he knew what Kelsey's general reputation in the community was as to being a law-abiding citizen, upright officially or otherwise; that the only objection made was that the evidence was incompetent in the case; that no objection was made to the evidence that the witness knew Kelsey personally; and that Kelsey was not the character of a man to make a false certificate, nor to the evidence relating to Tijerina. The court did not err in refusing to strike out the testimony admitted without objection; and the mere statement that the reputation of Kelsey was good was harmless in view of the testimony of appellants' own witness, Miller, at their instance, to the effect that, after Kelsey moved to Rio Grande City, he was considered a law-abiding man. The assignment is overruled.

Assignment 86 complains of the overruling of an objection to a question as leading. We overrule the assignment.

[32] Assignment 87 complains of the refusal of the court to give the following special charge: "You are also the exclusive judges of the mental development, capacity, and discretion of each and all of the witnesses, and of each and all the parties to this case, and to determine the same you may consider their answers, their attitude, and their general appearance." This assignment is overruled upon the authority of the case of H. E. & W. T. Ry. Co. v. Runnels, 92 Tex. 307, 47 S. W. 971.

[33] Assignment 88 is overruled because the special charge requested applies to all deeds introduced in evidence, leaving it to the jury to determine whether the recitals in each deed are sufficient to establish the identity of the land. The court was not required to give a charge covering and including, in its general terms, deeds to which it was not applicable.

Assignment 89 is overruled. The court did not permit the defense of stale demand to be considered by the jury.

[34] Assignment 90 is overruled. The instruction requested is merely a statement of general principles, which are not sought to be applied to any particular deeds.

[35] Assignment 91 complains of the failure to give the following special charge: "A deed to a deceased person, or to a deceased person and his heirs, is void; and, if you find from the evidence such an instrument, you are hereby instructed to disregard it." This is intended to apply to the so-called partition deed, upon which no recovery was permitted by the court, but the jury was permitted to consider the same. If not obtained by duress, it could be considered as an admission, even though insufficient as a deed. Appellants failed to request a charge requiring the jury to find whether or not this instrument was obtained by duress, and instructing that, if they found it was so obtained, they should not consider it for any purpose. The assignment is overruled.

What we said under the preceding assignment applies to the ninety-second assignment. The court permitted no recovery by reason of the so-called partition or confirmation deed, but only let it be considered as a circumstance to be considered with the other circumstances in the case on the question of whether appellants' ancestor had parted with his title to two leagues of the land in controversy.

[36] The ninety-third assignment is overruled. The charge requested is too broad. The partition would certainly be a circumstance admissible against those engaging in same. If sought to be excluded from admission against those not participating therein, the charge should have been so drawn.

[37] The ninety-fourth assignment is overruled because the latter portion of the special charge requested is upon the weight of the evidence.

[38] The ninety-fifth assignment is overruled. No recovery was permitted by the court on the theory of innocent purchaser, so it was unnecessary to define the duties incumbent upon a person to constitute him an innocent purchaser, as is sought to be done by this charge.

[39] The ninety-sixth assignment complains of the refusal of a special charge de-

155 S.W.—22

fining estoppel, but not applying same to any facts in this case. The assignment is overruled.

[40] The ninety-seventh, ninety-eighth, and ninety-ninth assignments all have no proposition or statement submitted thereunder, and do not even refer to other propositions or statements, as is frequently done by appellant in his brief. They will therefore not be considered.

The one-hundredth assignment attacks the verdict as unsupported by the evidence in that defendants recovered a general verdict for all land sued for, when the evidence showed them entitled to only some five thousand acres, if any at all. This contention is correct in part. The suit was for all of the three leagues, except certain land which had been sold and conveyed by Pilar Zarate y Bayerena and his heirs subsequent to the issuance of the patent to him. Defendants failed to disclaim as to any of the land. Plaintiffs proved title to the three leagues was granted to their ancestor. Defendants claimed that plaintiffs' ancestor had parted with the title to two leagues, and that same was vested in Francisco Elizondo and Manuel Zarate, under whom defendants claim. The court should not have permitted the jury to make a finding with respect to all the land, because, under the undisputed facts, there could be no controversy, except as to two-thirds of the tract; the remainder sued for belonging to plaintiffs.

[41] We cannot subscribe to plaintiffs' contention that they are also entitled to those portions of the tract to which defendants failed to show title in themselves by deeds properly admitted. Each of the defendants connected himself with the title of Manuel Zarate or Francisco Elizondo by conveyances held by us to have been properly admitted. True, by the exclusion of the deeds held improperly admitted, the acreage, to which some of the defendants have shown title by deeds, is reduced. The plaintiffs, however, cannot recover this acreage. By the finding of the jury it is established that Manuel Zarate, Francisco Elizondo, and plaintiffs' ancestor became the owners each of one-third of the La Alameda tract. Being tenants in common, those holding under them would occupy the same relation. Plaintiffs have title to one-third of the land, less the acreage sold out of said one-third. Defendants have each established title by the finding of the jury and their deeds to portions of the tract. The portions to which no title has been proved in this case we must take as belonging to some one else; and, as tenants in common cannot recover of other tenants in common the interests of cotenants not parties to the suit, plaintiffs cannot recover these interests. Boone v. Knox, 80 Tex. 642, 16 S. W. 448, 26 Am. St. Rep. 767; Bennett v. Virginia Co., 1 Tex. Civ. App. 321, 21 S. W. 126; Hess v. Webb, 113 S. W.

623; same case, 103 Tex. 46, 123 S. W. 111.

[42] Having passed upon all assignments of error which, under a liberal construction of the rules, we felt justified in considering, and having sustained several of same, we pass to a consideration of the question whether such assignments show error requiring a reversal of this case for another trial. One of the deeds improperly admitted was dated in 1908, one in 1890, and the other in 1876. Under the charge of the court, a verdict for defendants had to be based upon their finding either that the original grant was acquired by Pilar Zarate y Bayerena for himself, his brother Manuel, and his brother-in-law, Francisco Elizondo, jointly, or that, after acquiring the same for himself, he executed an instrument by which he conveyed a one-third interest in the La Alameda tract to each of said parties.

Considering the large number of deeds introduced in evidence, the proof of the record of a copy purporting to be a copy of a Spanish instrument executed in 1835 by plaintiffs' ancestor to his brother and brother-in-law, the evidence showing that plaintiffs recognized defendants' claim by agreeing to a partition with them, and deeds in which some of plaintiffs recognized their interest to be only their proportionate part of one league, we do not believe that the exclusion of the few deeds in question would have probably changed the result. In fact, we feel sure the result would have been the same, and therefore hold that the admission of said deeds was harmless error.

[43] The error pointed out under the one-hundredth assignment can be corrected by this court.

The judgment of the lower court is reformed so as to adjudge that appellants plaintiffs below, take nothing by their suit as to two-thirds of the La Alameda tract of land described in plaintiffs' petition, but as to the remainder of the land sued for by them, over and above said two-thirds of said tract, that they, as between them and appellees, do have and recover such remainder. As so reformed, the judgment is affirmed by this court.

Judgment reformed and affirmed.

### Appellants' Motion for Rehearing.

Appellants contend that we were misled by the language of their motion to strike out certain deeds (considered under assignments 1 to 12) into believing that the original Spanish instrument, or a copy thereof, had been admitted in evidence without objection, whereas in fact the copy, or purported copy, was admitted only as a part of the so-called partition deed. We find that the statement of facts is not clear on this point; apparently what was admitted in evidence was a translation of the Spanish instrument attached to the "partition deed," as corrected by the witness Vela upon a comparison thereof with a

record at Camargo, the corrections being of small consequence. While it was admitted in connection with the so-called "partition deed," it appears, also, to have been corrected so as to make it an examined copy of said record. Many of the propositions under these assignments are directed against the admission of said copy in evidence; but they are not germane to the assignments, and cannot be considered because such assignments complain of the overruling of a motion to strike out of evidence six other deeds. We find no assignment attacking the admission of Vela's testimony, or the admission of the copy which he testifies is correct according to his examination and comparison, but only assignments complaining of the admission of the so-called "partition deed," under which we find only one proposition referring to said copy, which reads, "It is impossible to confirm a void instrument;" and under this is a statement showing that the Spanish instrument was not offered as a copy of the Hidalgo county records. If it was not offered as a copy of the Hidalgo county records, it was evidently offered independent of the "partition deed," as that was a certified copy from the records of Hidalgo county, and the Spanish instrument attacked was also copied from said records.

We find no assignment under which we feel authorized to pass upon the admissibility of the copy of the Spanish instrument, and the motion being to exclude deeds, some of which were held admissible under assignments 38, 39, 44 to 48, 49, and 50, we are still of the opinion the motion was properly overruled.

Appellants in their brief, and also in the motion for rehearing, vigorously assail the sufficiency of the evidence to sustain the verdict of the jury; yet there is no assignment which attacks the same in any other particular than that the suit was for the three leagues (less 2,000 or 3,000 acres), and proof had been offered by defendants to only about 3,000 acres. We considered that assignment (No. 100), but did not construe it as sufficient to raise the issue of no title at all in the defendants, but merely as asserting the contention that plaintiffs were entitled to recover all the land except that to which the defendants had deeds. This construction is fully borne out by the statement and argument.

We overrule the appellants' motion for rehearing, also that of appellees.

### Appellees' Motion for Rehearing.

In passing upon the motions for rehearing filed in this case, we deemed it unnecessary to discuss appellees' motion, but have since concluded, for reasons satisfactory to us, to briefly discuss the contentions made in such motion.

[44] The first contention is that no error was committed by the lower court in rendering a general judgment that plaintiffs take nothing by their suit. Appellees admit that plaintiffs proved they were jointly the owners of an interest in the land sued for, but say that because it developed on the trial that some of the defendants were cotenants with plaintiffs and that plaintiffs had not been actually ousted, therefore plaintiffs should recover nothing. This court took the view that plaintiffs should recover the interests in the land to which they proved title, and should not recover as to the interests owned by defendants, and also the interests owned by other cotenants not parties to the suit; and we are still of the opinion that we were correct in so holding. Plaintiffs sued for the entire tract of land, and defendants answered with plea of not guilty, statutes of limitation of three, five, and ten years, and filed a cross-action alleging that plaintiffs' claim cast a cloud upon defendants' title, which they prayed should be removed. Each side required the other to file an abstract of title. Upon the trial it developed that plaintiffs were entitled to recover the land unless a grant of two-thirds of the tract (undivided) was established to have been made by their ancestor. The court so stated in his charge, but did not instruct a verdict for plaintiffs for the part to which they established title, but submitted the issues with respect to the conveyance of two-thirds by the plaintiffs' ancestor, with instructions that, if they found such grant to exist, then to find for defendants. The jury returned a general verdict in favor of defendants, upon which the court entered a judgment that plaintiffs take nothing by their suit, and that defendants recover all costs.

Appellees contend that such judgment was correct, and rely upon the case of Allen v. Long, 80 Tex. 261, 16 S. W. 43, 26 Am. St. Rep. 735, opinion by Judge Marr, in which a similar judgment was upheld; but in that case it appears that the plaintiff was seeking to recover the land as assignee of a joint-stock company, which it was claimed owned the title held by a former joint-stock company. The defendant, after filing general denial and plea of not guilty, filed a cross-bill claiming that he was a stockholder in the first company, and as such was holding the land for himself and the other stockholders of said first company. It was held that the second company, of which plaintiff was the assignee, had acquired no title, and, if plaintiff had any title at all (which it did not decide), it was merely such as he acquired from such of the stockholders of the old company as had consented to the conveyance of the land by the new company; and, if so, then the parties to the suit would be tenants in common, and plaintiff could not maintain the suit under the facts of the case. The court said in part: "The court below does not assign its reasons for deciding that the plaintiff could not maintain the

suit against defendant as a cotenant; but this was evidently because the court did not regard the claim or possession of the defendant as adverse to the original association, or any one claiming under it, nor as amounting to an ouster of the old association or of its stockholders, or of the plaintiff, if he can be regarded as claiming any interest in the land under the original association or any of its members. We have seen that the court was justified by the record in these conclusions. While one tenant in common may sue another in case of actual ouster, he cannot when the possession of his cotenant is not adverse to his own interest nor to the title under which they must both claim, if at all. To authorize the suit for recovery of possession (not partition), the ouster and adverse holding must be of such character as would put the statute of limitation in motion. Portis v. Hill, 3 Tex. 273; Alexander v. Kennedy, 19 Tex. 493 [70 Am. Dec. 358]."

It will be noted that the above holding was not considered necessary to the decision of the case, also that it does not appear that there was any basis to render judgment for plaintiff establishing his interest in the land, because, even if it had been held that he owned the interests of those agreeing to the sale by the new company, it does not appear what the extent of such interest would be. It will also be noted that the court felt impelled in affirming the case to do so without prejudice to plaintiffs' rights, which he had acquired from stockholders of the old company by reason of the conveyance by the new company, under which he claimed. We regard the case of St. L., A. & T. Ry. Co. v. Prather, 75 Tex. 54, 12 S. W. 969, opinion by Justice Gaines, as conclusive authority against appellees' contention. In that case a cotenant sued in trespass to try title to recover an undivided one-half interest in certain lots. The defendant pleaded not guilty and the statute of limitations. The trial court held that plaintiffs were the owners of the half interest sued for, but could not recover in an action of trespass to try title. It was held that they could recover; and, after citing our statute relating to plea of not guilty, the court said: "The defendant's pleas clearly show that it recognized no right of common ownership in the premises sued for. We think, therefore, that for the purposes of the action, they should be deemed, under the statute, equivalent to an ouster. Hence we conclude that plaintiffs were entitled, upon proof of their ownership of one-half of the lots, to a judgment admitting to possession of the property with defendant, and that it was not competent for the court to decree a partition. If the defendant desired a partition, it should have pleaded the facts and asked a judgment accordingly." The only difference between that case and this lies in the fact that in this case plaintiffs sued for the entire tract, and that de-

fendants, in addition to the pleading as made in said case, also filed a cross-action praying for removal of cloud upon their title to the land. Appellees say that because plaintiffs sued persons found by the court to be their cotenants, and claimed all the land, they must prove title to all or they cannot recover. This contention is not maintainable under our statutes relating to trespass to try title, which contemplate that all suits to determine title to land may be brought under the provisions of such statutes, of which articles 7753 and 7754 (Statutes of 1911) read as follows:

"Art. 7753. Where the defendant claims the whole premises, and the plaintiff shows himself entitled to recover part, the plaintiff shall recover such part and costs.

"Art. 7754. When there are two or more plaintiffs or defendants, any one or more of the plaintiffs may recover against one or more of the defendants the premises, or any part thereof, or any interest therein, or damages, according to the rights of the parties."

In the case of Ballard v. Carmichael, 83 Tex. 366, 18 S. W. 738, Justice Gaines said: "There was no error in refusing to enter a judgment for a partition. Neither party specially prayed for that relief; and the plaintiffs were entitled to a judgment of recovery for such interest in the land as they established by their evidence, and for a writ of execution commanding the sheriff to place them in possession with the defendant, their cotenant. The judgment, as here rendered, will be made to conform to this view. If defendants had disclaimed as to the interest in the land to which they were not entitled, they should have recovered their costs. But having defended as to the whole, and plaintiffs have recovered an undivided interest, the costs were properly adjudged in favor of the latter." See, also, King v. Bock, 80 Tex. 156, 15 S. W. 804, and Anderson v. Anderson, 95 Tex. 367, 67 S. W. 404.

In the case of Hess v. Webb, 113 S. W. · 618, affirmed by the Supreme Court in 103 Tex. 46, 123 S. W. 111, it was held that tenants in common, suing for eight-ninths of a tract of land, could not recover such eight-ninths because some interests included therein were owned by cotenants not shown to have died without issue, and not parties to the suit, and the defendant, a cotenant, had as much right to hold possession of such interests as plaintiffs. But the court held that plaintiffs were entitled to recover the interests to which they were shown to be entitled. The Supreme Court affirmed the case, and, through Chief Justice Gaines, stated that one tenant in common may sue another to establish his interest in land, and may recover a judgment for his admission into joint possession, or he may sue for partition, in which event all the tenants in common must be parties.

In the case of Cain v. Hopkins, 141 S. W.

836, this court (opinion by the late Chief Justice James) said: "We recognize the principle of law that one tenant in common, suing another who appears to be also a tenant in common of land, can recover judgment against the defendant only for the undivided interest he shows he has in the land. But that principle has no application when defendant is a naked trespasser." Appellees would change the rule so clearly stated by Chief Justice James so as to add a proviso to the effect that a tenant in common can, however, only recover the interest to which he may show himself entitled, provided he sues for that specific interest and no more. We think it is clear that, under our statutes, plaintiffs should have had judgment for the interest in the land owned by them, and protecting them in their right to possession with defendants. Appellees say that the judgment entered below does not have the effect of depriving plaintiffs of their land, for the reason that, if such judgment was offered in support of a plea of res adjudicata, evidence could be offered to show that defendants did not prove title to same. We consider it unnecessary to determine that question, because, even if appellees are correct, why should plaintiffs, if entitled to have their rights fixed by the judgment, be deprived of such right, and be required to depend upon their successful combating of a plea of res adjudicata in order to hold their land? Why should their title be placed in such a precarious and unsatisfactory condition?

[4, 5] Appellees complain of the hardship worked by their being compelled to pay the enormous costs accrued in this case, and say that, if the suit had been brought only for such interests as plaintiffs owned, they would at once have disclaimed. It will be seen, from the cases hereinafter cited, that such hardships frequently occur, and the only way to avoid them is to disclaim, except as to what the defendants feel entitled to hold, and which they think they can show themselves entitled to hold. Our statute governs this matter and permits a defendant to require the plaintiff to show title, and, if he fails to do so, defendant recovers the land; and such being the rule when defendant takes his chance of winning land to which he is not entitled by filing plea of not guilty as to all the land sued for, it appears reasonable that he should not complain of the penalty exacted by law if plaintiff shows himself entitled to recover all or a portion of the land sued for. On the question of costs, in addition to the case of Ballard v. Carmichael, supra, we cite the following cases on the proposition that plaintiffs should have recovered their costs below as well as their interest in the land: King v. Bock, 80 Tex. 156, 15 S. W. 804; Richmond v. Sims, 144 S. W. 1144; Perry v. Rogers, 52 Tex. Civ. App. 594, 114 S. W. 897;

Brown v. Humphrey, 43 Tex. Civ. App. 23, 95 S. W. 23; Bexar County v. Voght, 91 Tex. 285, 43 S. W. 14; Dutton v. Thompson, 85 Tex. 120, 19 S. W. 1026.

Appellees also say that had appellants suggested in the lower court that the judgment be so worded that it should not be construed as an estoppel to assert the title of Pilar Zarate y Bayerena to an undivided one-third of the land, and to the title of those that had acquired title from him by inheritance or purchase, there would have been no objection to such a modification. Appellees do not say they would have agreed that the judgment should give plaintiffs a recovery of the interests to which they proved title, and in fact it appears that both the trial court and appellees' counsel tried the case upon the theory that plaintiffs must recover all or nothing.

We assessed the costs of the appeal against appellees, because it appears that plaintiffs, in their motion for new trial, complained of the general verdict of the jury as unsupported by the evidence; and, the matter being thus called to the attention of the court, the correction should have been made. Sullivan v. Fant, 51 Tex. Civ. App. 6, 110 S. W. 521.

For the reasons herein stated, we overruled appellees' motion for rehearing.