HEREFORD CATTLE COMPANY ET AL. v. E. M. POWELL.

Delivered April 18, 1896.

**1. Attachment—Liquidated Demand—Corporate Stock.**
Plaintiff sued by attachment upon a rent contract which provided that a part of the rent ($800) should be paid in corporate stock, and the petition alleged that the $800 so to be paid in stock was valued by the parties in their contract at its face value. Held, that the claim for that part of the rent to be paid in stock was a liquidated demand, such as would support an attachment.

**2. Same—Excess of Interest Included.**
That there is a small amount of interest included in plaintiff's claim, in excess of that to which he is entitled, is not a sufficient ground for quashing the attachment.

**3. Practice on Appeal—Assignments of Error.**
An assignment of error was to the effect that, "The court erred in refusing to permit defendant to prove, as it offered to do, each and every allegation made in the fourteenth paragraph of its answer, as shown by bill of exceptions No. 5." The bill showed merely that defendant offered to prove each and every allegation in the fourteenth paragraph of its answer, without setting out the allegation or the specific testimony objected to. Held, that the assignment was not in compliance with Rule 59 for the District Court, and was insufficient.

**4. Same—Harmless Error.**
The improper admission of parol evidence to prove a fact which is sufficiently established by written evidence, is harmless error.

**5. Charge of Court—Assuming Facts.**
The charge of court may properly assume a fact which is established by uncontroverted evidence.

ERROR from Dallas. Tried below before Hon. R. E. BURKE.

*F. M. Etheridge,* for plaintiff in error.—1. When an attachment is sued out for an amount greater than the plaintiff is, under his pleadings, entitled to recover, such attachment will, on motion of the defendant, be quashed as being excessive. Evans v. Tucker, 59 Texas, 249; Joiner v. Perkins, 59 Texas, 300; Marshall v. Alley, 25 Texas, 342; Brown v. Martin, 19 Texas, 344.

2. The promise of a corporation to deliver, as part payment for rent, a specified amount of its own capital stock merely constitutes the promisee a stockholder, and if such contract is not specifically performed it does not become an absolute monied demand. Cook, Stockh. and Corp. Law, secs, 52, 60, 17, p. 25, and note; 2 Suth. Dam., 387, 388, 389; Moore v. Railway, 12 Barb., 156; 1 Waterman, Corp., 165, 168.

3.　It is error for the court to instruct the jury that a given fact is undisputed if there is any conflict whatever in the evidence as to the existence or non-existence of such fact.　Railway v. Finley, 32 S. W. Rep., 51.

*Holloway & Holloway,* for defendant in error.—1.　An attachment may issue for any breach of contract, for which the law gives a certain measure of damages.　Devoe v. Stewart, 32 Texas, 713; Stiff v. Fisher, 2 Texas Civ. App., 346, s. c. 21 S. W. Rep., 291; Waples-Platter Grocer Co. v. Basham, 29 S. W. Rep., 1118; Hockstadler v. Sam, 73 Texas, 317.

2.　In a suit against a corporation for the breach of a contract to deliver its stock in payment for a consideration received by it, the prima facie value of the stock is its par value.　Appeal of Harris (Pa.), 12 Atl. Rep., 743, 753; Alexander v. Relfe, 74 Mo., 495; Brinkerhoff Sav. Co. v. Home L. Co. (Mo.), 24 S. W. Rep., 129, 133.

3.　An attachment will not be quashed because the plaintiff includes in his claim a small amount of interest in excess of that to which he is entitled.　Donnelly v. Elser, 69 Texas, 282; Rainwater Hat Co. v. Oneal, 82 Texas, 337, S. C. 18 S. W. Rep., 570; Rogers v. East Line Co., 33 S. W. Rep., 312.

LIGHTFOOT, CHIEF JUSTICE.—This suit was brought by defendant in error E. M. Powell upon a rent contract, for the sum of $4021.28, for certain pasture lands, and a writ of attachment was sued out and levied upon the property of plaintiff in error for that amount.　Upon the trial there was a recovery by plaintiff below, from which this writ of error is prosecuted.

The following statement of the facts in the brief of defendant in error is adopted: On June 12, 1886, the plaintiff rented to the defendant company the ranch, Almyra, for an annual rental of $2400 in money and $800 of the stock of the company, to be paid by the company at Dallas, Texas, in equal semi-annual installments, in advance, "that is to say, the sum of $1200 in cash and $400 in face value of the stock of the company on the first day of July and January in each and every year." The lease provided that the plaintiff should expend $400 annually in digging wells and building outside boundary fences.　It was afterward agreed that the company might make the improvements, the amount so expended by it to be deducted from the rents.　Of the cash rent due January 1, 1890, $400 has not been paid.

On September 26, 1890, the plaintiff conveyed the ranch to W. M. Dubois, retaining the vendor's lien to secure ten purchase money notes, the first of which was due September 26, 1891.　These notes were also secured by a trust deed on the ranch, executed by Dubois.　The cash payment of $2500 recited in the deed was not paid at its delivery, and it was agreed by plaintiff and Dubois that plaintiff should have the rent of the ranch until this sum was paid.　On May 4, 1891, the Hereford

Cattle Company executed to plaintiff the $1000 note sued on for the cash rent due January 1, 1891. The term of the original lease expired June 30, 1891.

On May 4, 1891, the company executed to plaintiff the $500 note sued on for the cash rent from July 1, to October 1, 1891, with the understanding that, if Dubois should not be satisfied with the arrangement, the plaintiff would return the $500 note and the company would hold him harmless in the matter. In June, 1891, Dubois assented to the extension of the lease to October 1, 1891, and promised defendant that he would have an agreement with plaintiff as to whom the rent for the extension should be paid. On September 26, 1891, Dubois made default in the payment of the purchase money note due on that day. On November 28, 1891, in consideration of a year's extension, Dubois agreed that he would exercise no further control over the ranch and that the plaintiff should have all the rents. On January 20, 1892, the plaintiff wrote to the company: "Enclosed find note for you to sign for the rent of the ranch, Almyra, to the 1st of April, 1892, on terms you have had it on for the past five years." On January 30, 1892, the company replied: "I hasten to send you the note as requested." The note referred to is the $1040 note sued on.

On December 6, 1892, the trust deed given by Dubois was foreclosed and the ranch conveyed by the trustee to the plaintiff. The company retained possession of the ranch until some time in December, 1892. No payments have been made on the notes except as stated in plaintiff's amended petition. No rent has been paid for the time from April 1, 1892, to December 31, 1892. No stock rent has been paid for the eighteen months during which the company occupied the ranch after the original lease expired. Under instructions of the court, the jury found for the plaintiff for the $400 part of the cash rent due January 1, 1890, for the balance due on the $1000 note, for the amounts of the $500 and the $1040 notes, and for the cash rent from April 1, 1892, to December 31, 1892.

1. The first assignment of error is based upon the refusal of the court to quash the writ of attachment upon motion of defendant, which motion substantially presents the following grounds: That the cause of action sued on is partly for unliquidated damages, which will not support an attachment, and that a part of such amount is made up of interest charged at eight per cent per annum where it should have been six per cent. The first portion of the objection, and upon which the main contention of the company seems to be based, grows out of the contract between the parties by which it was agreed that the company should pay as rents for the lands embraced in the contract "annual rental of twenty-four hundred dollars in lawful money of the United States, and eight hundred dollars of the stock of its company." It was also agreed that $400 of the money should annually be used in improvements on the land.

It is contended by plaintiff in error that the portion of the claim sued on (about $800), which is for the "stock rent" or the item including the

rentals which the company agreed to pay in its capital stock, is not such a debt as will support an attachment.

Under our statutes an attachment may be sued out for a "debt or demand." Sayles' Stat., arts. 152, 155. While such demand should be sufficiently certain, as distinguished from unliquidated damages, to really constitute an indebtedness which may be declared upon with reasonable certainty, yet damages of an uncertain character, such as might grow out of a tort, would be excluded. In this case the action is ex contractu, the amount is certain and fixed, and we see no good reason why an attachment could not issue for the sum payable in stock, as well as for the sum payable in money. It has been so held in a number of States, as shown by the numerous cases cited in Drake on Attachments, secs. 13–23.

In our own State the rule has been clearly laid down by our Supreme Court in an able opinion by Judge Henry, as follows: "Our statutes allow attachments to be issued for 'debts and demands' (article 155) upon plaintiff's making affidavit 'that the defendant is justly indebted to the plaintiff and the amount of the demand.' Article 152. It requires neither argument or illustration to prove that the amount here meant is such as can be fairly approximated and stated upon existing facts, such as the value of property destroyed or its use when detained. An attachment may be issued in every instance when the amount does not depend upon uncertain contingencies unprovided for by the contract, and when it is susceptible of proof based upon certain and existing facts; when the suit is for damages for breach of contract dependent upon existing and uncontingent facts, and the damages claimed are actual and capable of estimation by the usual means of evidence, and not resting wholly or in part in the discretion of the jury, the affidavit required by our statute may properly be made and the attachment sued out." Hochstadler v. Sam, 73 Texas, 318. See also Waples-Platter Grocer Co. v. Basham, 29 S. W. Rep., 1118; Stiff v. Fisher, 2 Texas Civ. App., 346; Duval v. Stewart, 32 Texas, 713.

Even if there should be a small amount of interest in the claim of the plaintiff, in excess of that to which he may be found to be entitled upon the trial, this would not be sufficient ground upon which to quash the attachment. Hat Company v. O'Neal, 82 Texas, 337; Donnelly v. Elser, 89 Texas, 282; Rogers v. Lumber Co., 33 S. W. Rep., 312.

2. The thirteenth assignment of error is as follows: "The court erred in refusing to permit defendant to prove, as it offered to do, each and every allegation made in the fourteenth paragraph of its third amended original answer, filed herein April 9, 1895, as shown by defendant's bill of exceptions No. 5, and for the reason that defendant did not voluntarily come into this court, but was involuntarily brought into this court by the plaintiff, and it had the right, if not to recover over against the plaintiff, at least to prove the breach of the rental contract upon which the plaintiff declared, as a defense to plaintiff's alleged cause of action."

This assignment is rather general, and points us to defendant's bill of exceptions No. 5 for a statement of the objection to the evidence; and upon reference to the bill of exceptions, it shows that defendant offered to prove each and every allegation in the fourteenth paragraph of its said answer, and we must find the answer in order to see what these allegations were. The specific testimony objected to is not set out in the bill of exceptions, or in any other paper referred to in it. We do not think this is a compliance with the rules. We cannot tell from the bill of exceptions whether the testimony offered was legitimate evidence or not. The undisputed evidence contained in the record shows that the contract between the cattle company and E. M. Powell, defendant in error, was entered into June 12, 1886, for the term of five years; that prior to the termination of the lease, on September 26, 1890, a sale of the ranch was made by Powell under an executory contract, to W. M. Dubois, Powell retaining the rents. It further shows that afterward, through the consent of Dubois, the lease contract with plaintiff in error was renewed by Powell, and that subsequent to the damage which the cattle company claims was done to it by reason of Dubois turning his cattle into the pasture, the cattle company, through its legally authorized agent, had a long correspondence with the defendant in error, which resulted in a settlement between them, and the execution of the note sued on. At this time the cattle company made no pretense that the defendant in error was in anywise responsible for any damage done to it by Dubois. The pleading of the cattle company in this case setting up such damage against defendant in error seems to have been an afterthought.

3. Under the fourteenth assignment of error complaint is made that the court allowed the introduction in evidence of the conveyance from Dubois to plaintiff Powell, of date October 10, 1892, in which it was agreed that said Powell should be entitled to receive the rents from the ranch, which objection is made on nine different grounds. We do not deem it necessary to consider these grounds in detail.

In the sale of the property under executory contract from Powell to Dubois, it was agreed between the parties that Powell should collect the rents. This agreement was recognized by the plaintiff in error, who executed to Powell its notes for the rent; and even if the introduction of the instrument should be considered as erroneous, still such error would be harmless, in view of the facts proved outside of such instrument; but the written conveyance of the rents was set up by plaintiff below in his supplemental petition, it was made an exhibit to such pleading, and plaintiff in error had full opportunity to reply thereto. We think the evidence was legitimate. Especially is this true in view of the fact that at the time of the execution of the $500 note, October 1, 1891, by the cattle company to Powell, it was understood between them that if Dubois was not satisfied with the arrangement, Powell would return the $500 note. The conveyance in writing from Dubois to Powell, which was objected to, shows fully that Dubois was satisfied

with the arrangement, and was certainly legitimate evidence to establish that fact.

4. Under the fifteenth assignment of error, objection is made to the testimony of E. M. Powell, tending to show a verbal understanding between himself and Dubois, to the effect that plaintiff should collect the rents and apply the same to that part of the cash payment which Dubois failed to make at the time the deed was delivered; that he collected some of the rents and appropriated the same in that way.

The only interest which plaintiff in error could possibly have in that question was, whether or not E. M. Powell had authority to collect the rents. The cattle company throughout the whole transaction seems to have recognized that authority, and recognized it to the extent of executing its promissory notes to the defendant in error for such rents. The testimony shows, without dispute, that Dubois did authorize Powell to collect the rents, and this fact could be properly shown by parol testimony. But the plaintiff below went further than this, and proved it also by written evidence.

5. Under the twenty-eighth assignment of error objection is made to that portion of the court's charge in which it is said: "It is further shown, without dispute, that plaintiff sold and conveyed this ranch to one Dubois in September, 1890; but it was expressly understood between them (plaintiff and Dubois) that plaintiff should collect from the defendant company the rents due upon this lease contract."

It is claimed by plaintiff in error that the court should not have undertaken to decide this question, because there was testimony in the record disputing the fact. We have carefully examined the record, but have not been able to find such testimony. The testimony does show that on October 4, 1891, Dubois wrote to the agent of the company asking him to send a draft for $500 to close up the year's rent, and also proposing to rent the property for a longer term to the company; but it was shown beyond question that subsequent to that time, Dubois arranged with defendant in error Powell for him to collect all the rents on the ranch, which was fully acquiesced in by the parties, including plaintiff in error, and that the rents sued for in this case are unquestionably the property of defendant in error, and are not claimed by Dubois.

6. The sixteenth, seventeenth, eighteenth and nineteenth assignments of error are all of the same character, objecting to the correspondence between Dubois and defendant in error, and tending to show the ownership of defendant in error of the rents sued for in this case. The evidence was not objectionable, and was properly admitted.

We find no material error, and the judgment is affirmed.

*Affirmed.*

ON REHEARING.

1. In the able argument of counsel for plaintiff in error on the motion for rehearing, several points are presented which we deem it proper to notice. Upon the first ground of the motion, it is insisted that the

writ of attachment should have been quashed, because $800 of the amount was for capital stock of the company, and the petition does not allege that it was of any value.

The allegations of the petition were, in part, as follows: "the defendant agreed to pay plaintiff an annual rental of $3200, said rent to be paid semi-annually in advance, and to be paid in the city and county of Dallas—$1200 in cash, and $400 in the face value of the capital stock of said company on the first days of July and January    *    *    * and plaintiff alleges that the said sum of $800 per annum payable in capital stock of said company was, in making said lease, estimated as cash, dollar for dollar, and that said rental of $3200 per year, including $800 per year, was and is a fair and reasonable cash value for the use and occupation of said lands." The petition then sets out specifically the items of rent unpaid. The allegations of the petition clearly show that the $800 to be paid in stock was valued by the parties in their contract at its face value. The fact that on the trial of the case on its merits, the court instructed the jury to find against the plaintiff on the claim of $800 to be paid in capital stock of the company, because the proof failed to show its value, is no reason why the court should have sustained the motion to quash the writ of attachment—the allegations of the petition being sufficient. For the reasons fully set out in the original opinion, we conclude that the first ground of appellant's motion is not well taken.

2.  The second and third grounds of the motion for rehearing raise practically the same question, and are considered together.

We think the point considered in the original opinion is fairly stated. In order that there could not be any mistake in the point made by plaintiff in error, we set out in full in the opinion the thirteenth assignment of error, which complains that the court erred in refusing to permit defendant to prove, as it offered to do, each and every allegation made in the 14th paragraph of its third amended original answer, filed April 9, 1895, as shown by defendant's bill of exceptions No. 5.

By reference to bill of exceptions No. 5, as set out in the record, we find that "defendant offered to prove each and every allegation set forth by it in the 14th paragraph of its third amended original answer filed herein April 9, 1895, as a cross-action or counter-claim." By what testimony, or by what character of testimony such proof was offered to be made, does not appear. We are wholly unable to determine from the record whether such proof was proposed to be made by oral or written evidence; whether it was original or hearsay, or whether such testimony would be relevant or irrelevant. We have not been able to find any rule, or decision of our courts authorizing us to consider an objection to testimony without knowing what testimony was offered. To say that appellant offered to prove each and every allegation set forth in the 14th paragraph of the amended answer, is but little more definite than that he offered testimony to sustain his answer. The point is not technical, but substantial. Rule 59 of the district courts

is as follows: "Bills of exceptions must state enough of the evidence or facts proved in the case, to make intelligible the ruling of the court excepted to, in reference to the issue made by the pleadings."

In the case of Beeman v. Jester, 62 Texas, 433, our Supreme Court said: "A party bringing up for revision a ruling of the court below excluding evidence, must clearly lay before us in a bill of exceptions the nature of the evidence he proposed to introduce. It must be plainly shown that it does not consist of facts which were irrelevant or unimportant, and not leave us to presume that they were otherwise by putting upon the evidence a construction that would render its exclusion error, when a construction might be placed upon it that would justify the ruling of the court."

In the case of Brothers v. Mundel, 60 Texas, 242, our Supreme Court said: "The bill of exceptions taken to the ruling of the court, rejecting the testimony as to damages offered by Brothers does not inform us what the testimony was, so that we can tell whether or not it conformed to his pleadings upon this subject. It merely says that 'the defendant offered evidence to prove actual and exemplary damages, to which plaintiff objected, because there were no allegations in defendant's answer sufficient to admit such evidence.' The inference from this is that the proof offered did not correspond with the allegations made; and as the defendant has not informed us of the nature of his proof, we must presume that the court rejected it for that reason. Without deciding as to whether or not any proof of this character was admissible under his pleas, we do hold that the bill of exceptions points out no error whatever in the rejection of the evidence."

In Railway v. Leak, 64 Texas, 656, the court says: "In the absence of a bill of exceptions distinctly stating what testimony was objected to, we cannot revise the action of the court below in admitting the evidence."

In Mass v. Cameron, 66 Texas, 413; Judge Willie said: "This court has invariably refused to revise the action of the district court in excluding testimony when there is no proper bill of exceptions showing what the testimony would have been." Milliken v. Smoot, 64 Texas, 171. See also Cheek v. Herndon, 82 Texas, 146; Railway v. Lacker, 78 Texas, 280; McAuley v. Harris, 71 Texas, 632; Beeks v. Odom, 70 Texas, 186; Burleson v. Hancock, 28 Texas, 84.

This rule is not of modern origin, but has been enforced almost from the beginning of our judicial system. Burleson v. Hancock, 28 Texas, 83; Jones v. Cavasos, 29 Texas, 432; Bost v. Alford, 22 Texas, 399; King v. Gray, 17 Texas, 71; Styles v. Gray, 10 Texas, 507.

In the last named case this question was discussed by Judge Lipscomb. In that case, the first bill of exceptions showed that the defendant offered to prove an outstanding title to the land sued for. The court said: "There might have been exceptions to the kind of evidence offered; hence the necessity of a party excepting to a decision of the court

excluding evidence, showing in his bill what the evidence substantially was that he wished to use in his defense."

Further on in the same case the court says: "The fourth and last of appellant's bills of exception shows 'that the defendant offered evidence to attack the correctness of the surveyor's record, and to show fraud in the dates of the location and survey of Ann Gray, which was ruled out by court.' There can be no doubt but that it was competent for the defendant to show that the record of the surveyor was fraudulently incorrect; and if so fradulently made by him to give preference over an older location, such fraud would vitiate the entry so made with that intent and sustain the rights of the party really entitled to the preference; and what we have said in discussing the second bill of exceptions upon the effect of fraud supercedes the necessity of its further discussion. This bill of exceptions is, however, subject to the same objection raised to the one referred to: it is too vague and uncertain as to the character of the evidence by which the defendant sought to establish the fraud to enable this court to say whether the court below erred in ruling out the evidence offered.   *   *   *  "

A further discussion of the bill of exceptions seems to us unnecessary.

It is true, as suggested by counsel, that the court below in its bill of exceptions certified that the plaintiff in error offered to prove the allegations of the amended answer, but by what testimony it proposed to make such proof does not appear, and for this reason the bill of exceptions is defective. It is insisted that the court should consider only such objections as were made to the testimony in the court below. This may be conceded, and still we must know what testimony was offered, before we can intelligently consider the objections to it.

In the argument of counsel for plaintiff in error in attempting to show clearly the objections made, he refers to the 14th paragraph of the answer, as follows: "These allegations were, in short, that the defendant in error had during the lease period, conveyed by general warranty deed the leased premises to one Dubois, and that Dubois, armed with such deed as his authority so to do, entered upon the leased premises, subjecting the plaintiff in error to damages by his occupancy thereof and his trespasses thereon, which were fully set forth in appropriate averment."

That the defendant in error had during the lease period conveyed by general warranty deed the leased premises to Dubois, was charged in the defendant's answer and admitted in plaintiff's supplemental petition. This fact was not disputed, and the court so charged the jury.

By what testimony plaintiff in error desired to show he was damaged, by Dubois, in any manner, for which the defendant in error would be responsible, the bill of exceptions does not disclose.

The settlement between the cattle company and Powell after the time at which the damage is claimed to have accrued, the long correspondence between the parties in which the Dubois matter was mentioned, but no claims made against Powell therefor, the execution of the notes sued on

without any such claim, all seem to justify the correctness of our original conclusions upon the matter.

The other points presented by plaintiff in error we think are fully discussed in our original opinion.

The motion for rehearing is overruled.

*Motion overruled.*

May 23, 1896.