**FENTER v. ROBINSON.  (No. 8520.)**

(Court of Civil Appeals of Texas. Dallas. April 16, 1921. Rehearing Denied May 21, 1921.)

**1. Gaming ⬅14—Whether sale contract is a "future contract" depends on intention.**

Whether a contract for sale of cotton is a "future contract" under Laws 1907, c. 86, depends on the intention of the parties at the time of contracting, and if at that time their bona fide intention is that the cotton shall be actually delivered and paid for, the contract is not a "future contract"; otherwise if their intention is that the contract shall or may be settled by paying or receiving a margin or profit thereon.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Future Agreement.]

**2. Evidence ⬅433(6), 434(8), 437—Parol evidence of mistake, fraud, or illegality admissible.**

The parol evidence rule does not apply when facts are alleged showing the existence of fraud, accident, or mistake, or that the contract was entered into for the furtherance of objects forbidden by law, whether by statute or by an express rule of the common law or by the general policy of the law.

**3. Evidence ⬅437—Parol evidence admissible to show a sale contract is a "future contract."**

Parol evidence is admissible to show that a written contract for the sale of cotton, legal and proper in form, was in fact entered into for the purpose of speculating in futures and with intention not to deliver the cotton purchased, but to pay the difference between the contract price and the price on a future named day, contrary to Laws 1907, c. 86.

**4. Gaming ⬅49(2)—Evidence held admissible to show that cotton sale contract was a "future contract."**

In buyer's action for damages for seller's failure to deliver cotton contracted for, evidence of conversation between the parties at the time of making the contract as to its being settled by payment of difference between contract price and market price *held* admissible on the issue whether the contract was a "future contract."

**5. Sales ⬅50—Allegations as to buyer's insolvency immaterial where appellant did not allege repudiation on that account.**

In buyer's action for damages for seller's failure to deliver cotton contracted for, the

seller's allegations charging that the buyer falsely represented he was solvent and of large means were immaterial, where it appeared from the seller's pleading that after learning of the buyer's insolvency he. failed to allege a repudiation of the contract, but voluntarily acted on it, making an effort to carry it into effect and claiming its benefits; so that the court did not err in sustaining exceptions to such allegations.

**6. Sales ⚖️85(1) — Condition of deposit or bank guaranty held not a condition precedent, and one which could be waived.**

Where cotton selling contract provided that either party might require of the other a deposit or bank guaranty until the completion of the contract, as indemnity against loss by failure of the other to perform, the exercise of such right was not a condition precedent to the binding force and effect of the contract, and the seller's defense based thereon could be disregarded where he elected to continue to act under the contract and failed to notify of his intention to abrogate the contract or of his desire that it be abrogated because of the buyer's failure to make the deposit or give the guaranty.

On Motion for Rehearing.

**7. Gaming ⚖️48(3) — Allegation that cotton selling contract was intended to be settled by payment of difference in price held sufficient to render admissible parol evidence that it was a "future contract."**

In buyer's action for failure to deliver cotton contracted for, the seller's plea that it was contemplated when the contract was made that it might be settled by payment of the difference in price, without actual delivery of and payment for the cotton, held sufficient pleading of illegality to render admissible parol evidence that the contract was a "future contract."

**8. Gaming ⚖️49(2)—That buyer was dealing in futures admissible on issue of character of cotton purchasing contract made by him.**

That buyer of cotton was dealing in cotton futures was admissible on the issue whether the cotton purchasing contract on which he sued was also a "future contract."

Appeal from District Court, Hill County; Horton B. Porter, Judge.

Action by J. W. Robinson against Ben Fenter. From judgment for plaintiff, defendant appeals. Reversed and remanded.

Ivy & Stollinwerck, of Hillsboro, and V. L. Shurtleff, of Breckenridge, for appellant. A. M. Frazier, J. J. Averitte and Wear & Wear, all of Hillsboro, for appellee.

TALBOT, J.   The appellee sued the appellant to recover the sum of $19,000 as damages alleged to have been sustained on account of the failure of the appellant to deliver certain cotton as per the following agreement:

"J. W. Robinson & Co., Hillsboro, Texas.
"Confirmation No. 6.

"Hillsboro, Texas, 12/2, 1918. Mr. Ben Fenter, Penelope, R. 3—Dear Sir: We hereby confirm having this day purchased from you by J. W. Robinson two hundred (200) bales cotton, at 22 cents per lb. basis Middling white, other grades at differences, stated below, to be delivered by you f. o. b. cars, at Penelope, on or before Oct.-Nov. Dely., days after date hereof, * * * and in accordance, with the rules of the Texas Cotton Association (see extracts on back hereof) governing this contract, unless otherwise agreed and stated herein. Mixed packed bales to be classed by the low side only. Differences on or off basis price, as per our difference sheet.

No. ——

| | Spot- | | | |
| White. | ted. | Tinged | Stained. | Remarks. |
| --- | --- | --- | --- | --- |
| Good Mid.   ½ | up | | | If wet cotton |
| Strict Mid. 1 ¼ | " | | | to be docked |
| Middling | | | | at Penelope. |
| Strict Low Mid. | 200 off | | | |
| Low Mid. | 500 " | | | |

"Failure to return this or other signed acknowledgment or prompt correction in case of error will be understood as your approval and acceptance of the sale, terms and conditions as herein stated.
"Yours truly,        J. W. Robinson & Co.,
                          "Per Jordan.
"We hereby confirm sale on terms and conditions stated above.        Ben Fenter.
"Exhibit A.   Seller is to sign and return this sheet."

Rule 7 of the Texas Cotton Association referred to in the agreement quoted, provides:

"Unless otherwise provided for at the time of sale, it shall be the privilege of the buyer or the seller or both to require of the other a deposit or bank guaranty sufficient at all times, or until completion of contract, as indemnity against loss by the failure of the other to faithfully perform his part of the contract."

Appellee alleged that the appellant promised and agreed to deliver f. o. b. the cars at Penelope, in Hill county, Tex., on or before October-November delivery at 22 cents per pound, basis middling, and a failure to deliver said cotton on the part of appellant, which resulted in a breach of the contract and in damages to appellee in the sum of $19,000. The amount of damage is based upon the alleged fact that the cotton (basis middling) was worth in the market f. o. b. the cars at Penelope, Tex., on the last day of November, 1919, 41 cents per pound. A custom is alleged, and an agreement in accord with that custom, that a bale of cotton was 500 pounds; and it is specifically alleged that the difference between the amount agreed to be paid for the cotton contracted for at 22 cents per pound and the value of the cotton at different times during and at

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

the end of the cotton contract period at 41 cents a pound amounted to $19,000. The appellant pleaded a general demurrer, special exceptions, the general issue, and denied that at the time of making the contract sued on it was the intention of the parties or contemplated by them that an actual delivery of the cotton mentioned in the contract was to be made. He further averred that the contract declared on by the appellee "is a wagering contract, is against public policy and the statute of the state, and unenforceable in this," that at the time of making said contract it was not understood and contemplated by the parties that there should be an actual delivery of cotton thereunder and actual payment therefor according to its terms, but that such "contract could and should be settled and complied with by either party paying to the other the difference in the contract price and market price of such cotton, and either party should have the option of so settling at any time." Appellant also pleaded rule 7 quoted above, and that about March 15, 1919, he demanded of the appellee security as provided for in said rule, and that the appellee refused to give such security. The appellant further pleaded that as an inducement to have him sign the contract sued on the appellee represented that he (appellee) was entirely solvent, a man of large means, and in the event the cotton market should go against him he would be able to pay to appellant such loss as he (appellee) might suffer by reason of such contract; that by reason of such representations and relying on same appellant entered into the contract; that such representations were untrue; that appellee was insolvent and not able to pay appellant such losses as he was likely to sustain by reason of said contract. Exception urged by the appellee to this last clause of the appellant's answer was sustained, and the allegations made therein were stricken out. By supplemental petition the appellee denied, among other things, that the contract sued on was a wagering contract, but, on the contrary, alleged that it was agreed and contemplated that the cotton contracted for should be delivered in accordance with the terms of said contract, and that the appellee contracted for and purchased said cotton with the view of its actual delivery. The case came on for trial June 11, 1920, and at the conclusion of the introduction of the evidence the court instructed the jury which had been impaneled to try the case to return a verdict in favor of the appellee for the sum of $19,000, which was done, and judgment entered accordingly.

The several assignments of error need not be stated and discussed in detail. The controlling question in the case, as made by the pleadings and presented in the assignments and replies thereto, is whether the contract sued on shows on its face a completed and valid contract, or was intended when made to be the basis of an agreement to engage in dealing in what is commonly known as "futures," which is prohibited by law, and, although there is nothing on its face to so show, may it nevertheless be shown by parol evidence to be illegal. By the act of April 10, 1907 (Laws 1907, c. 86), dealing in cotton futures is prohibited. In section 2 of said act "futures," "dealing in futures," and "future contracts" are defined as follows:

"1st. A sale or purchase, or contract to sell or any offer to sell or purchase any cotton * * * to be delivered in the future when it was not the bona fide intention of the party being prosecuted under this act, at the time that such sale, contract, purchase, or offer to sell or purchase, was made that the thing mentioned in such transaction should be delivered and paid for as specified in such transaction. 2nd. Any such sale, purchase, offer, or contract where it was the intention of the party being prosecuted hereunder at the time of making such contract or offer that the same should, or, at the option of either party might be settled by paying or receiving a margin or profit on such contract."

Section 6 provides for the punishment of a person who shall make or offer to make for himself any future contract and prescribes the penalty.

[1] Whether or not the contract involved in this suit was a "future contract" within the contemplation and meaning of the statute referred to depended on the intention of the parties at the time they made it. If it was their bona fide intention at the time the contract was made that the cotton should be actually delivered and paid for as specified therein, it was not within the meaning of the statute a "future contract." If, on the other hand, it was their intention at the time of the making of the contract that the same should, or, at the option of either of them, might, be settled by paying or receiving a margin or profit thereon, it was within the contemplation of the statute such a contract. Puckett v. Wilson Bros. Mercantile Co., 211 S. W. 642. The pleadings presented the issue thus outlined and required the court, if offered, to hear evidence pro and con upon it. The contract in question shows on its face a sale and purchase of cotton to be delivered in the future, and the allegations of the appellant's answer were sufficient, if true, to show that it was a wagering contract and unenforceable. The appellant offered testimony in support of its allegations, but the trial court seems to have taken the view that it conclusively appeared from the face of the contract that it was a valid contract, and that parol evidence was inadmissible to vary its terms and show the contrary. Consistent with this view, all testimony offered tending to show that the con-

tract, for the reasons charged by appellant, was illegal, was excluded, and a verdict in favor of the appellee directed. This was error.

[2] While the general rule is well established that parol evidence is not admissible to restrict, enlarge, or contradict the terms of a written contract where there is no ambiguity in its meaning, yet when facts are alleged showing the existence of fraud, accident, or mistake, or that the contract was entered into for the "furtherance of objects forbidden by law, whether it be by statute, or by an express rule of the common law, or by the general policy of the law," the rule has no application. Seeligson v. Lewis & Williams, 65 Tex. 215, 57 Am. Rep. 593; Wiggins v. Bisso, 92 Tex. 222, 47 S. W. 637, 71 Am. St. Rep. 837; Smith v. Bowen, 45 Tex. Civ. App. 222, 100 S. W. 796; P. T. Talbot & Son v. Martindale, 211 S. W. 302, and cases cited. Mr. Greenleaf says:

"The rule is not infringed by the admission of parol evidence, showing that the instrument is altogether void, or that it never had any legal existence, either by reason of fraud, or for want of due execution and delivery, or for the illegality of the subject-matter." 1 Greenl. Ev. (14th Ed.) 360, 361.

[3] So that parol evidence is admissible to show that a written contract, legal and proper in form, and purporting to be for the purchase and actual delivery of cotton, as in the present instance, was in fact entered into for the purpose of speculating in futures and with no intention to deliver the cotton purchased, but to pay the difference between the contract price and the price on a future named day. In Smith v. Bowen, supra, the court held that the rule that a written instrument sued upon cannot be varied or contradicted by proof of a contemporaneous parol agreement does not apply in cases where the consideration, or one of the considerations, upon which the transaction is based is illegal. In Seeligson v. Lewis & Williams, supra, the Supreme Court of this state quoted with approval from the rule established by the Supreme Court of the United States, in the absence of a prohibitory statute, the following:

"And if, under guise of such contract, the real intent be merely to speculate in the rise or fall of prices, and the goods are not to be delivered, but one party is to pay the other the difference between the contract price and the market price of the goods at the date fixed for executing the contract, then the whole transaction constitutes nothing more than a wager, and is null and void."

[4] The appellee testified that during the fall of 1918 and at the time of making the contract sued on he was in the cotton business in Hillsboro, Tex. On cross-examination he testified, in substance, that the contract was made December 2, 1918, and calls for the delivery of cotton in October-November of the next year. He then said, in answer to the question if he were not dealing in spot cotton and future cotton also, that he was "hedging." Upon objection of the appellee's counsel this answer was excluded. The appellant also offered to show by this witness that along in the spring and summer of 1919, long before the cotton in question, according to the written contract, was to be delivered, the appellee endeavored to sell the contract to a number of persons, but upon objection of the appellant such testimony was not allowed. The appellant further offered to prove that on December 2, 1918, and just before the signing of the contract in suit, he was in the appellee's office, and they had a conversation in which they agreed to sign the contract "with the express understanding that it was to be the means of betting on the future price of cotton, and that it was stated by the appellant to the appellee that he, the appellant, would gamble with him, the appellee, that he tossed a coin for heads or tails to see whether they would make the gamble on the cotton contract, and they then stepped into the middle room of the office where Mr. Jordan was and signed the contract," but this testimony was objected to by the appellee, on the ground that such testimony would violate the rules of evidence, and the objection was sustained by the court and the testimony not allowed. Again, the court refused to permit the appellant to testify that just a few minutes before the contract was signed he and the appellee discussed how the contract could be settled, and that the appellee then stated to the appellant that it would be settled "just like you settled the contract that you had with Wilson Bros. by paying off the difference between the contract price and the market price." The objection upon which this testimony was excluded was:

"That this conversation, at the time the written paper was signed and not included in the paper would vary the terms and effect of the written contract, was irrelevant and immaterial."

The court's action in excluding these several bits of testimony was excepted to by the appellant and is assigned as error. Clearly under the well-established exception to the general rule that parol testimony is not admissible to vary or contradict the terms of a written contract, as above pointed out, the testimony excluded was pertinent and admissible.

No matter upon whom rested the burden of proof in this case upon the issue of the illegality of the contract, the appellant assumed the burden by offering proof tending to establish its illegality, and all such testimony was excluded. There was no specific allegation that the contract in the form

made was entered into as a device to avoid what would otherwise be a vicious consideration or that the method adopted was for the purpose of evading the law, but the allegations made by the appellant in his answer charging its illegality were sufficient, we think, to authorize proof thereof.

[5, 6] We agree with the contention of the appellee that, inasmuch as it appeared from appellant's pleading that after he had learned of appellee's insolvency he failed to allege a repudiation of the contract, but, on the contrary, that he voluntarily acted on the same, making an effort to carry it into effect and claiming its benefits, the appellant's allegations charging that appellee falsely represented, as an inducement to get appellant to enter into the contract, that he (appellee) "was solvent, a man of large means, and that in the event the cotton market went against him he would be able to pay to appellant such loss as he (appellant) might suffer by reason of such contract," were immaterial, and therefore the court did not err in sustaining exceptions to such allegations. Nor do we think the right of either party to the contract to require of the other a deposit or bank guaranty until completion of the contract as indemnity against loss a condition precedent to the binding force and effect of the contract, even if the contract is not illegal; and the appellant having elected to continue to act under the contract, and having failed to give any notice of his purpose or intention to abrogate the contract, or desire that it should be abrogated or terminated, because of the appellee's failure to make the deposit or give the guarantee, the court did not err in disregarding such defense. We are also of the opinion that, appellant having contracted to deliver 200 bales of cotton, basis middling, and having unconditionally refused to make delivery of any cotton, or any grade of cotton, he was in no position to insist that by the terms of the contract he had the right to deliver cotton of an inferior grade and value than middling cotton.

For the reasons indicated, the judgment is reversed, and cause remanded.

### On Motion for Rehearing.

[7] We have no doubt of the sufficiency of the appellant's pleadings to raise the issue of whether or not the contract sued on was illegal. As shown in our original opinion, the appellant pleaded not only that the contract was a "wagering contract," but that it was such a contract because it was not understood and contemplated by the parties at the time it was made that there should be an actual delivery of cotton thereunder and actual payment therefor according to its terms, but that such contract could and should be settled and complied with by either party paying to the other the difference in contract price and market price of such cotton, and either party should have the option of so settling at any time. These alleged facts, under the authority cited in our first opinion, are amply sufficient, if true, to show the contract to be illegal and unenforceable. There is a vast difference in the facts here alleged and the facts alleged in the cases cited and relied on in support of the contrary view expressed by the appellee. In McCamant v. Batsell, 59 Tex. 363, the answer simply charged that the note and other indebtedness which the appellee claimed to have paid as surety for the defendant McCamant was based "upon a gambling transaction" by the defendant in cotton futures, and the Supreme Court held that, in the absence of averments stating what the real character of the transaction was, or that the plaintiff had such connection with it as to make it an unlawful transaction between the parties, an exception to that portion of the answer was properly sustained.

Our holding here is not in conflict or inconsistent with any principle of law announced in M. Kangerga & Bro. v. Willard, 191 S. W. 195. That was a suit in which the appellant sought to have two deeds canceled upon the ground that they were executed as a method of creating a mortgage upon their homestead, and the court, after stating the very familiar rule that "a party who seeks judicial annulment of a contract upon the ground that it is not permitted by law must allege facts which disclose its unlawful character," said:

"This being a suit to cancel deeds solely upon the ground that they were designed to operate as a mortgage upon the homestead, it devolved upon the plaintiffs to allege facts showing that the mortgage was one not permitted by the Constitution."

In Burr v. Davis, 27 S. W. 589, the answer of the defendant was, in effect, that the contract sued on was one for speculating in the future prices of bacon, and the court held that, inasmuch as it was not alleged that there was an agreement at the time the contract was made that there should be no delivery, but only an accounting, an illegal contract was not pleaded. The court expressed itself as follows:

"If the parties to such contract agree at the time it is made that there shall be no delivery of the goods, and there shall be only an accounting between the parties at the maturity of the contract, such contract is illegal, and should not be enforced by the courts."

The legal effect of the language of the appellant's answer in this case is that there was an agreement between him and the appellee at the time the contract sued on was made that there should be no delivery of the cotton, and that the contract should be settled and complied with as pointed out in our original opinion, and as hereinabove stated.

The bills of exception taken to the trial

court's action in excluding the testimony offered by the appellant on the issue of the illegality of the contract were sufficient, both in form and substance, to require a review of such action of the court.

Bill of exception No. 1 shows the following proceedings:

Ben Fenter, the defendant, being on the witness stand was asked:

"Did you and Mr. Robinson [the plaintiff] at the time the contract was signed discuss at that time any previous contract that you and Wilson Bros. had at Mart?"

Counsel for plaintiff objected, saying:

"We object to that because it affects the terms of the written contract—very proposition that your honor passed."

Whereupon the court remarked:

"I don't see that that would be pertinent to the issue involved in this case."

Defendant then said, in effect, that it would be pertinent as showing the construction the parties placed on the contract in question and the method by which they agreed to settle it. The court then said:

"I sustain the objection."

Then Mr. Ivy, counsel for defendant, said to the court:

"We expect to prove by the witness that just a few minutes before the contract in question was signed the plaintiff, Robinson, and defendant, Fenter, discussed the question of how this particular contract could be settled, and that the plaintiff, Robinson, stated to him [defendant] that it would be settled 'just like you settled the contract that you had with Wilson Bros. by paying off the difference between the contract price and the market price, and that this contract could be settled in that way.'"

Counsel for the defendant stated:

"This evidence is introduced for the purpose of showing that the parties gave the option of settling the contract [in this suit] without actual delivery of the cotton."

Thereupon counsel for the plaintiff objected and said:

"This conversation at the time the written paper was signed not included in the paper, it would be varying the terms and effect of the written contract and is irrelevant and immaterial."

The court sustained the objection and said:

"I sustain the objection to the question propounded."

And counsel for defense excepted and said:

"Defense expected to show by witness the facts as above set out, and witness would have so testified if permitted."

This bill, unlike the bill in Hereford Cattle Co. v. Powell, 13 Tex. Civ. App. 496, 36 S. W. 1033, is sufficient to show that the testimony

230 S.W.—54

was both legitmate and pertinent to the issue upon which it was offered, and no presumption can be indulged that the circumstances may have been such as to show that the court's discretion was properly exercised. On the contrary, the bill of exceptions discloses that the defendant, Fenter, was entitled as an absolute right to have the testimony go to the jury for their consideration in determining the issue to which it related. We do not concur in the appellee's counsel's evident analysis and construction of this bill of exception, nor in the legal effect claimed by him for it, and think it is clear that his contention in regard thereto is not supported by any authority cited.

Bill of exception No. 2 shows that, after the witness Fenter had testified that he had a transaction with the plaintiff in the fall of 1918, and that he first saw plaintiff about the transaction involved in this suit in his office about December 2, 1918, that plaintiff was buying on the October market of 1919, and that he wanted to sell the plaintiff 200 bales of cotton, he was asked the following question:

"Well, tell the jury what you said to him, plaintiff, and what he said to you after you went into the office there?"

To which counsel for the plaintiff objected, saying:

"We object to that, your honor, because what was said under the law is supposed to be merged in the written contract, and we object to oral testimony that would tend to change or vary the terms of the contract; and same is irrelevant and immaterial."

Whereupon the counsel for the defendant said:

"We offer it for the purpose of showing what the understanding of the parties was with reference to this contract. It is not a question of changing or altering a written contract, but for the purpose of showing the intention of the contract. It is extraneous testimony offered for the purpose of showing the intention of the parties and what was contemplated by the parties in the making of the contract."

Whereupon counsel for the plaintiff further objected, and said:

"It is not permissible for the defendant to give his version of what they meant; it is the province of the court to construe the contract, and, as I said awhile ago, the familiar and well-settled doctrine is that all conversations prior to the execution of the contract are supposed to have been merged into the written contract, and the written paper is the paper that is controlling and binding. They allege no mistake or nothing of that kind."

Whereupon the court ruled and said:

"I can't see the purpose of the testimony."

Then counsel for the defendant said to the court:

"We expect to prove by Ben Fenter [defendant] that on the occasion just a short while before the signing of the contract in question the defendant was in plaintiff's office, and they had a conversation with reference to the contract, and that they agreed to sign this contract with the express understanding that it was to be the means of betting on the future price of cotton, and that it was expressly stated to the plaintiff by the defendant that he would gamble with him, and that, to illustrate the idea that it was a gamble with him, he tossed a coin for heads or tails to see whether they would make the gamble on the cotton contract, and that in pursuance of this conversation, had in the private office between the defendant and the plaintiff, they stepped into the middle room where Mr. Jordan was and signed the contract."

Whereupon counsel for the plaintiff further objected that the admission of that kind of testimony would violate all rules of evidence. Whereupon counsel for the defendant state to the court that the testimony was offered for the purpose of showing, and tending to show, that it was not contemplated by the parties that there should be an actual delivery of the cotton as mentioned in the contract, and that the witness would so testify, whereupon the court remarked, "What would be the need of a contract," and then sustained the objection to the admission of the testimony and refused to allow its introduction.

Like bill of exception No. 1, above referred to, this bill was sufficient to show that the testimony excluded was pertinent and legitimate upon the issue of whether or not the contract sued on was a wagering contract. It was sufficient in form and disclosed that the defendant, Fenter, was entitled, as a matter of right, to have the benefit of the testimony in the trial of the case.

The bills recite the question asked, the objections made thereto what the witness would have answered in reply thereto or what was expected to be proved thereby the object and purpose to be obtained by introducing it and the court's ruling that exception was reserved.

[8] The bill of exception No. 4 shows that while the plaintiff was testifying in his own behalf he was asked by counsel for the defendant:

"You were dealing in spot cotton and future cotton also were you not?"

To this question plaintiff's counsel objected on the ground that the testimony sought to be elicited was immaterial; that, if plaintiff was dealing in some other kind of business, that would not affect this. Counsel for the defendant then stated to the court that defendant claimed this to be a gambling contract; that it had been shown that the plaintiff was in the cotton business, "and I want to show that in addition to handling spot cotton plaintiff at the same time was dealing in futures." The court remarked:

"I can't see the materiality of that as affecting this contract."

Counsel then stated to the court:

"We want to go further and show what kind of cotton business he was in, to show that in addition to handling spot cotton he [plaintiff] was also handling futures, for whatever it is worth to throw light on this transaction."

The testimony was excluded, and the defendant excepted. This bill of exception is sufficiently definite and certain to require consideration of it by this court; and the fact sought to be shown by the testimony, we think, was relevant and material in a case of this character. It was competent to show the fact and then for the jury to determine its probative force, if any, in passing on the issue to which it related, and, like the bills of exception mentioned, it showed the question asked, what the answer thereto would have been or what was expected to be proved, the object and purpose to be attained by its introduction, the court's ruling, and that exceptions were reserved.

The matters here discussed were fully considered and understood when our original opinion was prepared, and the earnest and zealous presentation of appellee's motion for a rehearing by his able counsel has failed to convince us that we erred in the disposition made of the appeal, or in any conclusion reached upon any question raised and determined therein.

The motion for rehearing is therefore overruled.