## MIDDLETON v. BRAWLEY. (No. 3124.)

Court of Civil Appeals of Texas. Amarillo. Dec. 5, 1928.

Rehearing Denied Jan. 9, 1929.

W. D. Wilson, of Spur, for appellant.
Bouldin & Fish, of Matador, for appellee.

RANDOLPH, J.   This suit was filed by appellant against appellee.   The case in the trial court was submitted to a jury upon two special issues; one only being answered by the jury.   However, no question arises upon the failure of the jury to answer the second issue, as the parties agreed that that issue became immaterial, in view of the answer to the first issue.

The plaintiff's petition, omitting the formal parts, alleges that he was the owner of a certain town lot in Lubbock, Tex.; that the defendant owned two tracts of land in Dickens county, which he desired to exchange for the lot owned by the plaintiff, the plaintiff to assume the payment of certain indebtedness to the Federal Land Bank of Houston, Tex., against the first of the two tracts owned by the defendant, and to execute to defendant notes secured by vendor's lien against the second tract of land owned by the defendant, for the difference in the value of plaintiff's property and the defendant's property, after deducting the amount of said incumbrance—being the sum of $5,000—against the first tract; that defendant was desirous of making the exchange of properties and closing the deal by the execution and delivery of deeds without delay and without allowing time or opportunity to have abstracts of title prepared or the title examined; and that defendant falsely and fraudulently represented to the plaintiff that he was seized and possessed of a good, perfect, and indefeasible title to the said two tracts of land, including the oil, gas, and minerals thereon, and had the lawful right to grant, bargain, sell, and convey the same to the plaintiff, and that there were no outstanding titles to or incumbrances on said land, except the incumbrance in favor of the Federal Land Bank, aforesaid, against the first of said tracts, and further represented to plaintiff that he was conveying the lands by general warranty deed, and that, if any defect in title or incumbrance on either of said tracts of land should afterwards be discovered, he would do whatever might be necessary to cure the same or remove such incumbrances and give to the plaintiff a good and perfect title to said two tracts of land, including the oil, gas, and minerals therein; that plaintiff, relying upon the representations aforesaid so made by the defendant, and not knowing the true condition of the title to said land, agreed with the defendant to convey to him, in exchange for said lands, the lot in Lubbock, to assume the payment of the sum owing the Federal Land Bank on the first tract of land, and to execute and deliver to defendant his vendor's lien notes in the sum of $5,000, with lien on second tract, in consideration of the conveyance by the plaintiff to him of said town lot, which deed from the defendant to plaintiff was to be a general warranty of title as aforesaid, and with the agreement to cure any defect in or remove any incumbrance from the title to said land, if any should afterwards be discovered therein.

Further, plaintiff alleged the materiality of such representations, that they were made for the purposes of inducing plaintiff to make the exchange, that he relied on them, etc., and alleging also the execution and delivery of the deeds according therewith.   Plaintiff

further alleges the falsity of such representations, and that defendant knew they were untrue when he made them, etc.

The defendant excepted to said petition. because (among other exceptions) the plaintiff's petition attempts to set up three separate and distinct causes of action—one for breach of warranty, one for breach of a verbal contract, and one for fraud—and it is impossible to determine from such petition what the plaintiff is trying to make the basis of his suit and upon what grounds he seeks recovery, and that same shows a misjoinder of causes of action. The record contains no order or decree of the trial court showing any disposition of the exception, and, in view of the result of the trial, it is apparent that the appellee thought it unnecessary to bring this question properly before this court.

The defendant specially pleaded that, if the deed to said land, conveying same to the plaintiff, contains a general warranty of title, and there is no reservation to the defendant nor exception from said conveyance, of a one-half interest in the royalty to the mineral rights in said land, then said reservation was omitted from said deed because of fraud, accident, or mutual mistake at the time of the execution of same; that it was agreed and understood by and between the plaintiff and defendant, at the time of the execution of the deed and prior thereto, that one-half of the royalty to the mineral rights was reserved or excepted from the conveyance, and would not pass to plaintiff, the plaintiff being informed that the defendant owned only one-half of the royalty to the mineral rights, and that the other one-half was outstanding in one Godfrey, and that the scrivener who wrote the deed was instructed to so draw the same, and was given the deed from Godfrey and wife to defendant, in which deed said one-half royalty had been reserved, and was instructed to draw the deed from the defendant to plaintiff just like said deed from Godfrey to defendant, and it was understood between plaintiff and defendant that the deed to plaintiff was just like the deed from Godfrey to the defendant, and, if said mineral rights are not excepted in the deed to plaintiff, then it is because of the fraud of plaintiff or because of accident or mutual mistake.

The trial court submitted to the jury the two issues as stated above—the one answered by the jury being 'as follows: ."Special issue No. 1. Was there an agreement between the plaintiff and defendant that one-half of the royalty in the mineral rights in and to the 133.83 tract of land was to be reserved or excepted from the deed from Brawley to Middleton, conveying the 133.83 tract of land? Answer Yes or No." This was answered by the jury: "Yes."

■While the plaintiff and the attorney who drew the deed from defendant to plaintiff testified that there was no such agreement, the defendant and his wife testified to the contrary. In addition, while the defendant testifies that the agreement of the parties was to pass the title under the circumstances above pleaded and with the representations above charged, yet there was delivered with the deed an abstract of the title which showed the Godfrey deed with the reservation of the one-half of said royalty. While these circumstances to some extent support the testimony of the defendant and his wife, yet on their testimony alone the jury were authorized to find as they did, and we will not disturb their finding on the ground of the insufficiency of the evidence to sustain it. Underwood v. Security Life & Annuity Co., 108 Tex. 381, 194 S. W. 585.

■ The appellant contends that ."the general warranty contained in a deed being contractual and prior or contemporaneous agreement being presumed to have been merged therein, is not subject to be varied or contradicted in order to have reservations or limitations ingrafted thereon which contradict its clear language, and, to render evidence admissible for such purposes, admissible facts 'showing fraud, accident or mistake must be alleged."

In addition to fraud and accident, the defendant pleads mistake in the failure to incorporate in the deed the reservation of the oil interest. The defendant testified that the land was sold to the plaintiff with the express reservation of one-half of the oil royalty therein; that they delivered the Godfrey deed to the scrivener with the positive instruction to make the deed they were to execute contain the reservation of the interest in the royalty, just as it was made in that deed; that, when the deed from them to the plaintiff was prepared, they again asked the scrivener if he had drawn it like the Godfrey deed, and he told them he had.

Taking this statement to be true, as we are required to do under the finding of the jury, the proof showed that the reservation was agreed to and was a part of the trade originally made, and the jury had a right, under the circumstances, to presume that it was not incorporated in the deed through fraud, accident, or mistake.

■ While all oral agreements prior to the execution of a written contract are presumed to have been merged in such written contract, such presumption is not conclusive, and may be rebutted by showing that the agreement, by reason of mutual mistake, fraud, or accident, failed to embody all the terms of the contract actually made. Standard Fire Ins. Co. v. Buckingham (Tex. Civ. App.) 211 S. W. 533.

■ The parol evidence rule does not apply when facts are alleged showing the existence of fraud, accident, or mistake. Fenter v. Robinson (Tex. Civ. App.) 230 S. W. 844.

■ Equity will grant relief, where parties

act under mutual mistake. Ray v. Barrington (Tex. Civ. App.) 297 S. W. 781.

The fact of the agreement that the tract of land was sold with the reservation of the one-half interest, and that such agreement was not included in the deed after the instructions to the scrivener to do so, furnishes a basis of fact for the presumption that same was left out of the deed by fraud, accident, or mistake.

■ "An inference of fact should not be drawn from premises which are uncertain, but the facts upon which an inference may legitimately rest must, it is said, be established by direct evidence as if they were the very facts in issue." 22 C. J. 84, § 27. This basis was therefore furnished when the facts of the agreement and of its being left out of the deed were established by direct evidence.

■ The appellant complains of a statement made by defendant's attorney in his argument to the jury when he asserted that the trade was made upon the insistence of the plaintiff, and "that on the 1st day of December, 1925, when the trade was finally made and the deed executed, the plaintiff had met the defendant and his wife at Dickens, where they had gone to attend the trial for the murder of their son and had insisted on closing the deal and the execution of the deed then and under such circumstances." The plaintiff's counsel excepted to such argument. The trial court then admonished counsel for the defendant to stay in the record, but did not orally or in writing instruct the jury not to consider the statement made in the argument. The trial court certifies that there was no evidence in the record showing that the defendant and his wife were at Dickens at said time to attend a trial at Dickens. The plaintiff prepared no special charge to be given the jury so instructing them, nor does the bill of exceptions show that any request was made of the court for him to so instruct the jury.

The plaintiff testified when on the stand during the trial that, "at the time this trade was made, Mr. and Mrs. Brawley were in bad shape and really did not feel like attempting to transact business on account of their misfortune. * * * They were both bothered considerably over their serious misfortune. * * * Mr. and Mrs. Brawley were torn up considerably over their misfortune." There was other testimony from the defendant referring to their condition on account of their misfortune. Mrs. Brawley, while on the stand, testified, "We did not go down to Dickens for the purpose of closing the trade up, but were down there attending court." Defendant Brawley testified, "As to how come us to be carrying our papers, deeds, and abstracts around with us instead of leaving them at home, my boy got killed there and we had to leave all our valuable papers; my wife had taken them out of the trunk and put

them in the satchel and that is the reason we had them with us."

If there was anything in the way of sympathy for the defendant that entered into the decision of the question by the jury, it is not apparent to us, and the verdict of the jury as above stated was abundantly supported by the evidence, and the mere reference to the son having been murdered in the statement made by the attorney could not have had any more effect than the statements made by the plaintiff and drawn out on cross-examination from the defendant, without any attempt on plaintiff's part to have such evidence excluded.

If there was in our minds a "reasonable" doubt as to whether or not the use of the language of the attorney quoted above influenced the verdict of the jury, it would be our duty to reverse the judgment. But we think that there is nothing in the jury's verdict that indicates passion or prejudice. Davis v. Hill (Tex. Com. App.) 298 S. W. 526.

Again, the reference to the son having been murdered does not appear to have any evidentiary bearing on any fact at issue in the case—it could not have influenced the verdict of the jury upon the issues submitted to them, or influenced them to answer such question either for or against plaintiff. Certainly the testimony that had gone in before without question was much more calculated to exert such influence than the isolated statement of the attorney.

Finding no reversible error, we affirm the judgment of the trial court.